442 A.2d 222

**COMMONWEALTH of Pennsylvania**

v.

**Letitia Denise SMALLWOOD, Appellant.**

Supreme Court of Pennsylvania.

Submitted Oct. 19, 1981.

Decided March 10, 1982.

---

478

480

Timothy J. O'Connell, Harrisburg, for appellant.

Edgar B. Bayley, Jr., Dist. Atty., for the Commonwealth.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY, McDERMOTT and HUTCHINSON, JJ.

## OPINION OF THE COURT

O'BRIEN, Chief Justice.

Appellant, Letitia Denise Smallwood, was convicted of two counts of murder of the first degree and one count of

arson in the Court of Common Pleas of Cumberland County. She was sentenced to life imprisonment for each count of murder and ten to twenty years for arson, the sentences to run concurrently. Following trial counsel's filing of boiler plate post-verdict motions, appellant obtained new counsel (hereinafter "appellate counsel") who represented her for the disposition of post-verdict motions and on direct appeal. Argument on post-trial motions was rescheduled four times, the first time pursuant to appellate counsel's request, the last three because he failed to appear. When appellate counsel failed to appear the fourth time, the trial court proceeded to decide post-trial motions, denying them on the merits on January 10, 1974. Two years later this Court affirmed the judgment of sentence. *Commonwealth v. Smallwood*, 465 Pa. 392, 350 A.2d 822 (1976).

Appellant, by new counsel, filed a petition in the Court of Common Pleas for relief under the Post-Conviction Hearing Act, Act of January 25, 1966, P.L. (1965) 1580, 19 P.S. § 1180–1, *et seq.* (hereinafter "PCHA"), alleging ineffectiveness on the part of trial counsel. She also alleged that appellate counsel was ineffective in not raising the claims on appeal. Subsequent to a hearing on October 5, 1979, the Court of Common Pleas denied relief. This appeal followed.

In the present case, a fire occurred at an apartment building at 11 North Pitt Street in Carlisle, Pennsylvania, during the early morning hours of August 29, 1972. The decedents, Paula Wagner and Steven Johnson were residents of the building. Wagner died of injuries received when jumping from the building. Johnson, unable to escape the flames, died from extensive burns.

The Commonwealth's evidence indicates that Richard Baltimore was living with Paula Wagner, deceased, and simultaneously dating appellant. Appellant resented the relationship between Baltimore and Wagner and made threats against them on a number of occasions. On August 23, 1972, appellant filed charges against Baltimore for assault and battery. Two days later she dropped the charges, relying on Baltimore's promise that he would stop seeing Wagner and,

instead, live with appellant. Appellant rented a room at the James Wilson Hotel, which is located across the street from 11 North Pitt Street. Baltimore did not leave Wagner as he had promised, and the arguments and threats continued. At 1:58 a. m. on August 29, 1972, a false fire alarm occurred at the James Wilson Hotel. At 2:20 a. m., appellant was seen at the Hamilton Restaurant which was adjacent to 11 North Pitt Street. The alarm for the fire at 11 North Pitt Street was turned in at 2:54 a. m. Appellant was again seen at 3:15 a. m. in the vicinity of the fire.

Richard Baltimore, injured during the fire, required hospitalization. Appellant visited him at about 1:45 p. m. on August 29, 1972. A nurse testified that she saw appellant and that she was visibly upset and crying. Appellant stated, "It's my fault, it's my fault. I'm responsible for him being here." When the nurse asked her how she could be responsible for a fire, appellant became calm and said no more. This testimony was corroborated by an orderly who was also present. He, however, testified additionally that appellant stated, "it's because of me that the fire started."

Appellant testified that she had a good relationship with Baltimore and Wagner. She claimed she dropped the assault and battery charges against Baltimore because he was on parole and would be returned to jail. She also asserted that she was at the Hamilton Restaurant at 1:30 a. m. on the night of the fire and then returned to her room in the James Wilson Hotel and went to bed. She denied knowledge of the false alarm, but admitted making the above-described statement to the nurse. She explained that Baltimore would have been with her rather than in the burning building if they had not been arguing.

In this appeal from the denial of post-conviction relief, appellant alleges five instances of trial counsel's ineffectiveness, and concurrently argues that appellate counsel was ineffective in not alleging the errors in post-trial motions and on direct appeal. Although trial counsel testified at the PCHA hearing, appellate counsel had died prior to that date.

■ In order to obtain relief under the Post-Conviction Hearing Act, it is necessary "[t]hat the error . . . has not been finally litigated or waived." PCHA § 3(d), 19 P.S. § 1180–3(d). An issue may not be finally litigated or waived, however, in a proceeding where counsel's representation is ineffective. *Commonwealth v. Musser*, 463 Pa. 85, 343 A.2d 354 (1975). Ineffective assistance of counsel is an extraordinary circumstance that justifies the failure to raise an issue. *Commonwealth v. Watlington*, 491 Pa. 241, 420 A.2d 431 (1980); *Commonwealth v. Wideman*, 453 Pa. 119, 306 A.2d 894 (1973).

■ As we stated in *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967):

". . . counsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had some reasonable basis designed to effectuate his client's interests. The test is not whether other alternatives were more reasonable, employing a hindsight evaluation of the record."

*Id.*, 427 Pa. at 604–605, 235 A.2d at 352–353; *Commonwealth v. Roman*, 494 Pa. 440, 431 A.2d 936 (1981). Counsel is not ineffective in failing to assert a meritless claim. *Commonwealth v. Hosack*, 485 Pa. 128, 401 A.2d 327 (1979). It is with these standards in mind that we review appellant's claims of ineffectiveness of trial and appellate counsel.

Appellant's first claim is related to her statement to the nurse on duty the day appellant visited Richard Baltimore in the hospital. The purpose of the nurse's testimony was undoubtedly to connect appellant, through her own admission, to the setting of the fire. This testimony was the first presented by the Commonwealth. Appellant asserts that the admission was proffered before the *corpus delicti* of arson was established. Thus, she argues, trial counsel was ineffective for not objecting to its admission at that time, and appellate counsel was ineffective for failing to raise the issue.

■ To establish the *corpus delicti* of an arson murder, the Commonwealth must show proof of death resulting from a fire of incendiary origin. *Commonwealth v. Cockfield*, 465 Pa. 415, 350 A.2d 833 (1976); *Commonwealth v. May*, 451 Pa. 31, 301 A.2d 368 (1973). "That the *corpus delicti* can always be proved by circumstantial evidence is unquestionable. (footnote omitted)" *Commonwealth v. Leslie*, 424 Pa. 331, 334, 227 A.2d 900, 902 (1967), *quoting, Commonwealth v. Nasuti*, 385 Pa. 436, 123 A.2d 435 (1956).

■ It is well-settled that "[u]ntil the corpus delicti is established, introduction of the accused's statement is inadmissible." *Commonwealth v. Cockfield, supra; Commonwealth v. Moore*, 466 Pa. 510, 353 A.2d 808 (1976); *Commonwealth v. May, supra*. A conviction must be reversed if it follows the admission of an inculpatory statement by the accused without proof of the *corpus delicti*. *Commonwealth v. Leslie, supra*.

■ However, it is also true that "the order of proof is a matter within the realm of [the trial judge's] judicial discretion which will not be interfered with in the absence of an abuse thereof." *Commonwealth v. Burns*, 409 Pa. 619, 627, 187 A.2d 552, 561–562 (1963). Even if defense counsel had objected to the admission of the statement, the Commonwealth subsequently did establish the *corpus delicti* and could have obtained the admission of the nurse's testimony thereafter. Therefore, the failure of defense counsel to object to the admission of the inculpatory statement was not prejudicial to appellant.

■ Appellant also argues that defense counsel erred in cross-examining Trooper Sweet, a deputy fire marshall, called by the Commonwealth as an expert. The witness' opinion as to whether or not the fire was of incendiary origin was not elicited on direct examination. Defense counsel, instead of declining to cross-examine the fire marshall and proceeding to move for a directed verdict at the proper time, chose to cross-examine the witness. Trial counsel's first two questions elicited an opinion from Trooper Sweet that the fire was definitely incendiary in origin.

Defense counsel's cross-examination of the deputy fire marshall was, at the time, reasonable. Perhaps, in retrospect, the tactic was unwise, but it was clearly reasonable for counsel to have attempted to elicit from the deputy fire marshall an admission that he was unable to determine whether the fire was of incendiary origin, thereby illustrating the Commonwealth's inability to establish the *corpus delicti.* "This Court will not substitute its determination for that of counsel, as to what course of action would have been more effective in promoting the client's interest." *Commonwealth v. Blair,* 491 Pa. 499, 507, 421 A.2d 656, 660 (1980). Furthermore, there was testimony by other witnesses that established the incendiary origin of the fire.[1] Although the

---

1. Farris Dilly, a resident of 11 North Pitt Street at the time of the fire, lived in a second-floor apartment in the southeast wing, adjacent to the stairwell. He testified that at bout 2:20 a. m. on August 29, 1972, he noticed a flash under his hallway door. When he opened the door he observed a fire raging from the second floor landing, not up the stairway but straight up through the roof. He further testified that the fire originated in an area where a sofa, two chairs and a television stand had been abandoned. He claimed he had been in the hallway about ten minutes prior to seeing the flash, and he neither saw a fire nor smelled smoke. The furniture had been present at that time.

 John Rhodes, also a tenant at 11 North Pitt Street on August 29, 1972, resided on the third floor of the building in the north wing. He testified that he left his apartment to watch the false fire alarm at the James Wilson Hotel across the street. After observing the scene for about 20–25 minutes he returned to his apartment, arriving there about 2:35 or 2:40 a. m. Rhodes testified that there was a chair, a television and old rags abandoned in the area between the victims' apartments on the third floor. He neither observed a fire nor smelled smoke at that time. Five to ten minutes later Rhodes heard a thump on his hallway door, and discovered a fire raging in the area of the abandoned furniture.

 The fire marshall testified that there was no evidence of fire either in the basement or on the first floor of the building. The second floor was badly burned in the southeast wing [the area of Farris Dilly's apartment], and the third floor was almost entirely destroyed [the area of John Rhodes' and the victims' apartments]. On cross-examination he noted that the evidence of the two separate fires without interconnecting trails led him to the conclusion that the fire was of incendiary origin. On redirect, the fire marshall claimed that in light of Rhodes' and Dilly's testimony that they neither smelled smoke nor observed smoldering or flames just ten minutes before discovering the fire, the furniture had not ignited by spontaneous combustion.

Commonwealth's redirect examination of the fire marshall detailed the relevance of other witnesses' testimony, the substantive testimony had been previously offered.

■ There is no merit to appellant's third argument that defense counsel was ineffective for failing to object to the trial court's charge. Appellant asserts that the charge was defective in that it did not "instruct the jury as to the nature of [appellant's] supposed admission and how it is to be considered by the jury."

Appellant's reliance upon *Commonwealth v. Frazier*, 411 Pa. 195, 191 A.2d 369 (1963) is misplaced. In *Frazier* this Court granted a new trial because the trial court's charge to the jury was, taken in its entirety, confusing, and the questions for decision were not clearly stated and probably not understood. In *Frazier* the evidence was "consistent with and did not rule out the possibility of suicide." *Id.*, 411 Pa. at 203, 191 A.2d at 373. This Court further stated in that case, "*where*, as here, *the evidence is in doubt as to the manner or the cause of death*, the question of the existence of the *corpus delicti* should first be determined without consideration of the defendant's admission of guilt." *Id.* (Emphasis Added)

In this case, the above ambiguities are not present. The testimony was uncontroverted that two persons died as a direct result of a deliberately set fire. Thus, the considerations in *Frazier* are not present herein, and defense counsel was not ineffective for failing to object to a jury charge which, read as a whole, accurately and fairly "embodied a sufficient exposition of the critical points of law relevant to appellant's charges." *Commonwealth v. McNeil,* 497 Pa. 187, 199, 439 A.2d 664, 670 (1981).

■ Appellant's fourth claim is that defense counsel was ineffective for failing to locate, interview and call witnesses favorable to the defense. This claim was explored in detail at the post-conviction hearing, and will not support a finding of ineffective representation on the part of defense counsel. "Assuming appellant's counsel knew of the witnesses, failure

to call possible ... witnesses is not per se ineffective assistance of counsel." *Commonwealth v. Robinson*, 487 Pa. 541, 546, 410 A.2d 744, 746 (1980), quoting, *Commonwealth v. Owens*, 454 Pa. 268, 274, 312 A.2d 378, 381–82 (1973). The decision whether to call a witness is a matter of trial strategy. *Commonwealth v. Robinson, supra.*

██ Appellant asserts that the testimony of Anna Wagner, mother of Paula Wagner, a victim of the fire, would have "cast serious doubt upon the credibility of two Commonwealth witnesses...." During trial the prosecutor disclosed, in chambers, that Mrs. Wagner believed one of the Commonwealth witnesses, who claimed to have seen her daughter with appellant the afternoon before the fire, must have been mistaken. Mrs. Wagner told the prosecutor she believed her daughter had been in the company of a friend, Bonnie Aucker, at the time she was supposed to have been observed.

At the PCHA hearing, Mrs. Wagner testified that she did not remember whether defense counsel spoke with her following her disclosure to the prosecutor. However, both defense counsel and the assistant district attorney testified at the hearing that such a conversation took place. The prosecutor remembered instructing Mrs. Wagner to wait in his office until defense counsel could speak with her. He also remembered introducing defense counsel to Mrs. Wagner and Mrs. Aucker, the deceased's friend, then leaving them alone in his outer office. Sometime later he claimed defense counsel entered his inner office and informed him he would not call the witnesses.

Defense counsel testified that he interviewed Mrs. Wagner and Bonnie Aucker in the prosecutor's outer office. He claimed that Mrs. Wagner was emotionally upset, confused and uncertain about the dates in question. Because of Mrs. Wagner's mental state defense counsel determined, in exercising his professional judgment, that it would have been unwise trial strategy to call Mrs. Wagner to the stand. He feared her testimony would generate and underscore the jurors' sympathy for the victim, and in light of the uncertain

and confused testimony, he concluded the possibility of harm to appellant outweighed the benefit of the testimony.

Whether or not a discussion between Mrs. Wagner and defense counsel took place was a matter of credibility for the fact-finder to determine. "[O]ur task is not to engage in *de novo* evaluation of testimony." *Commonwealth v. Lutz*, 492 Pa. 500, 506, 424 A.2d 1302, 1305 (1981). The hearing judge obviously found the testimony of the prosecutor and defense counsel believable, and we will not disturb the conclusion absent an abuse of discretion. We also cannot fault defense counsel for choosing not to present the testimony of Mrs. Wagner. *Cf. Commonwealth v. Hagood*, 491 Pa. 181, 420 A.2d 401 (1980). It was a matter of trial strategy and had a reasonable basis designed to effectuate Miss Smallwood's interests. *Commonwealth v. Twiggs*, 460 Pa. 105, 331 A.2d 440 (1975); *Commonwealth ex rel. Washington v. Maroney, supra.*

Second, appellant argues that the testimony of Dwight Barnes should have been presented at trial. At the PCHA hearing, Mr. Barnes claimed that he was with appellant at the time she was supposedly observed with the victim, Paula Wagner, the day of the fire. Thus, appellant asserts that Mr. Barnes' testimony, in conjunction with that of Mrs. Wagner, would have established that neither Paula Wagner nor appellant was at the Wagner apartment the afternoon before the fire.

At the PCHA hearing defense counsel described the efforts he made to contact certain witnesses. He sent letters to Mr. Barnes and none was returned. He contacted appellant's mother, described his difficulties in reaching certain witnesses, and requested her help in locating them. Mr. Barnes did appear at trial. Both the witness and defense counsel described a fifteen minute meeting prior to Mr. Barnes' appearance in court. At the PCHA hearing Barnes asserted that he observed the entire trial as a spectator.

Defense counsel testified that neither Mr. Barnes nor anyone else told him that appellant was with Barnes the

afternoon before the fire. He further testified that he asked Mr. Barnes, known to defense counsel as an observer at trial, if there was anything more he could offer. Mr. Barnes told defense counsel that the only thing he "knew" about was taking appellant to the hospital to visit Richard Baltimore.

We agree with the hearing court's conclusion that, in light of his efforts, defense counsel cannot be faulted for not presenting testimony of which he was not aware. As the hearing judge stated in his opinion denying appellant's PCHA relief:

"We find it slightly incredible that Barnes could sit through the testimony of [the Commonwealth witness] and fail to point out his inconsistent information to anyone. We find it much more credible that Barnes was not a cooperative witness and that it would be unreasonable to expect [defense counsel] to have discovered his testimony, if true, in the absence of cooperation. Therefore, the failure to use Barnes to counter the [Commonwealth witness'] testimony can hardly be seen as so unreasonable as to mandate its use by [appellate counsel] as grounds for appeal."

PCHA opinion at 8.

Appellant asserts a similar claim with respect to testimony by her sister, Lisa Smallwood, which appellant claims was foregone unnecessarily. At the PCHA hearing Lisa Smallwood testified that on the Saturday prior to the fire she was at a football game with appellant and Richard Baltimore at the same time a Commonwealth witness claimed he saw an unidentified black female (allegedly appellant) at 11 North Pitt Street.

At the PCHA hearing defense counsel reiterated appellant's trial testimony that she was at a football game Saturday evening with Richard Baltimore. Mr. Baltimore's testimony confirmed this. Neither mentioned being with appellant's sister. Defense counsel concluded that since Lisa Smallwood's testimony would have been merely cumulative, he did not want to risk contradicting appellant's own testi-

mony concerning her companion at the game. Additionally, defense counsel testified that Lisa Smallwood's responses were evasive and her demeanor unconvincing. We agree with the hearing judge that there is "no indication here of unreasonable trial strategy or ineffective assistance of counsel, and certainly nothing that would compel having this issue raised on appeal." PCHA Opinion at 9.

Similarly, there is no merit to the related claims that defense counsel was ineffective in failing to present testimony of Ana Thompson, who was present in the lounge in the James Wilson Hotel during the time the false fire alarm occurred, and for calling the bartender as a defense witness. Appellant asserts that Thompson's testimony would have contradicted the bartender's testimony that he had informed appellant of the false fire alarm. This testimony was damaging to appellant because she claimed she went to bed before the false alarm and denied any knowledge of it until after the fact.

The bartender was called by the defense to rebut testimony that appellant was seen in the Hamilton Restaurant, across from the lounge, buying cigarettes about 2:20–2:30 a. m. Appellant, as noted above, testified that she was asleep before 2:00 a. m., that she had indeed bought cigarettes the night in question but she did so between 1:30 and 1:45 a. m. The bartender corroborated this testimony, but additionally contradicted appellant's earlier statement that she was unaware of the false fire alarm.

At the post-conviction hearing defense counsel revealed that this latter testimony came as a surprise. However, he also claimed that he was hesitant to impeach the bartender's testimony for fear it would jeopardize the portion that was favorable to the defense. As the hearing judge stated, "He [defense counsel] concluded that it was important to refute the defendant's presence in the Hamilton Restaurant at 2:30 a. m., and [the bartender's] testimony was still the best way to do this." PCHA Opinion at 10.

Ana Thompson testified at the PCHA hearing that the bartender told her that there was a false fire alarm but she did not have personal knowledge of the event. She also could not specify the precise time that she was approached by appellant for change while in the lounge. Her testimony at the PCHA hearing was that she arrived at the lounge about 1:40–1:45 a. m., left about 2:30 a. m., and sometime during that period appellant requested change for a quarter. It is clear, then, that not only was Ana Thompson unable to corroborate appellant's testimony that she was in the lounge about 1:45, she additionally was unable to testify to appellant's lack of knowledge of the false fire alarm. Furthermore, defense counsel testified that he had the same problem locating Ms. Thompson prior to trial that he had with Dwight Barnes.

We find no error in defense counsel's decisions to present the bartender's testimony and to refrain from calling Ana Thompson to the stand. This strategy is reasonable and does not constitute ineffective representation.

Finally, appellant argues that trial counsel was ineffective for failing to object to prejudicial and damaging testimony. She claims counsel should have objected to the testimony of James Wileman, a resident of 11 North Pitt Street at the time of the fire. He testified that he saw an unidentified black female in the stairwell of the apartment building and heard her say, "she was going to get that black mother's f— ass." Appellant asserts that this testimony was prejudicial because it fit into a pattern of threats that allegedly were made by appellant and directed at Paula Wagner and Richard Baltimore.

As the Commonwealth points out, a reading of the trial transcript reveals that the witness' testimony was intended to show that the above incident occurred on Monday, the evening before the fire. Defense counsel, on cross-examination clearly established that it was on Saturday, two days earlier. Also on cross-examination, defense counsel asked the witness if he had ever seen appellant prior to the preliminary hearing in this case and the witness said he had not.

 We agree with the hearing judge's conclusion that defense counsel employed a reasonable trial strategy and was not ineffective for failing to object to the above testimony. "The strategy employed easily could have been viewed by both [defense counsel] and [appellate counsel as preferable to an attempt to exclude the testimony, which the jury might have interpreted as an effort to hide seriously damaging evidence." PCHA Opinion at 5.[2]

Finding no support for the allegations of ineffective representation by defense or appellate counsels, the Order of the Court of Common Pleas denying appellant's PCHA relief is hereby affirmed.

2. There is similarly no validity to the claim that defense counsel provided ineffective representation by his failure to object to Richard Baltimore's testimony that appellant, weeks before the fire, referred to Richard Baltimore as "Ben." Baltimore asserted that "Ben" was a movie about a rat named Ben who survived a fire in which his companion rats were destroyed. On direct examination appellant claimed she called Baltimore "Ben" because he treated Paula Wagner "like a rat." We agree with the hearing judge's conclusion that this testimony is relevant to questions of malice and intent, essential elements of an arson murder. Furthermore, this testimony was unlikely to have weighed heavily in the minds of the jurors. There cannot be a finding of ineffective assistance of counsel for failure to object when any objection by counsel would have been fruitless. *Commonwealth v. Giknis,* 491 Pa. 215, 420 A.2d 419 (1980).