## In Re Anonymous No. 56 D.B. 82

Disciplinary Board Docket No. 56 D.B. 82.

To The Honorable Chief Justice and Justices of The Supreme Court of Pennsylvania:

McDONALD, *Member*, August 2, 1984—Pursuant to Pennsylvania Rule of Disciplinary Enforcement 208 (d) (2) (iii), the Disciplinary Board of the Supreme Court of Pennsylvania (board) submits its findings and recommendations to your honorable court with respect to the above-captioned petition for discipline.

## I. HISTORY OF PROCEEDINGS

On September 13, 1982, the Office of Disciplinary Counsel (hereinafter referred to as petitioner) filed a petition for discipline alleging professional misconduct involving four separate charges against respondent, [      ], hereinafter referred to as respondent.

Charge one alleged that respondent violated D.R. 1-102(A)(4) — as the result of misleading advertising concerning his fee schedule relating to uncontested divorces under the Pennsylvania No-fault Divorce Act. Charge one also alleged that respondent violated D.R. 7-101(A)(2) — involving an

intentional failure to carry out a contract of employment with his clients because, in certain instances, respondent would notify his clients that their cases were on hold pending the receipt by him of additional fees.

Charge two alleged that respondent was responsible for the intentional alteration of the dates on two client consent forms involving the same divorce proceeding and that, when the alteration was questioned by the court, respondent falsely testified that he had received affidavits from his client in their altered form. It was also charged that respondent subsequently induced the client to sign an affidavit in an attempt to support his statements to the court. In the second charge, respondent is alleged to have violated D.R. 1-102(A)(4), D.R. 1-102(A)(6), D.R. 7-102(A)(4), D.R. 7-102(A)(5), D.R. 7-102(A)(6), and D.R. 7-102(A)(7).

In Charge three respondent is alleged to have been personally responsible for the alteration of a client consent form in another divorce action and in filing said altered consent form in court, as well as with refusing to proceed with a client's divorce until certain fees were paid. In Charge three, respondent was alleged to have violated D.R. 1-102(A)(4), D.R. 1-102(A)(6), D.R. 6-101(A)(3), D.R. 7-101(A)(2), D.R. 7-102(A)(4), and D.R. 7-102(A)(6).

In Charge four it is alleged that respondent was responsible for the intentional alteration of affidavits of consent and the filing of said affidavits in their altered form. In Charge four, respondent is alleged to have violated D.R. 1-102(A)(4), D.R. 1-102(A)(6), D.R. 6-101(A)(3), D.R. 7-102(A)(4), and D.R. 7-102(A)(6).

These matters were referred to hearing committee [     ], consisting of [     ]. A hearing was held on February 8 and 9 of 1983 of the misconduct

issues. By letter dated July 28, 1983, the hearing committee notified the parties that it had made a finding of general misconduct in the case and would reconvene the hearing for purposes of taking testimony and otherwise receive evidence on the question of discipline. A further hearing was held on September 9, 1983, limited to the appropriate discipline. At this hearing, respondent requested that the record be held open so that he could file a petition with this court requesting permission to call as defense witnesses, two members of the Court of Common Pleas of [      ] County. Following the refusal of this court to grant respondent's request, the hearing was again convened on November 3, 1983 and the record concluded on the issues relating to appropriate discipline.

The opinion of the hearing committee was filed on February 29, 1984. The hearing committee determined that the conduct of respondent complained of in Charge one was not in violation of any of the Disciplinary Rules of the Code of Professional Responsibility. However, the committee concluded that the violations alleged with respect to Charges two, three and four had been established. The committee recommended that respondent be suspended from the practice of law for a period of one year.

Both parties filed exceptions to the report and recommendations of the hearing committee. Petitioner excepted to the dismissal of the allegations of misconduct alleged in Charge one and to the imposition of suspension, petitioner contending that respondent should be disbarred. The exceptions of respondent allege, inter alia, that the hearing committee applied an erroneous evidentiary standard, that the evidence submitted did not support the findings of the hearing committee, and that the hearing committee's findings on the merits of the violations al-

leged may have been tainted by evidence with respect to prior incidents of discipine. Oral argument was held before a panel of the board on April 24, 1984.

## II. STATEMENT OF FACTS

[     ], respondent, was admitted to the practice of law on October 21, 1974. He has maintained a principal office in [     ], where he has practiced under the partnership name of [Respondent and A], with his partner, [A]. Respondent has conducted a statewide practice which has specialized in serving individuals seeking a low-cost consentual divorce under the Pennsylvania Divorce Code. Respondent has advertised widely throughout the Commonwealth of Pennsylvania through the use of ads which set forth information and fees which were contended to be the lowest available for a simple divorce by consent. Respondent made it clear that he would not represent the parties in any other area associated with a domestic practice, such as custody, support, and equitable distribution. With few exceptions, the entire divorce proceedings would be handled by mail and the parties rarely had any personal contact with respondent or his office except by mail. Between 1981 and the present time, respondent received approximately 110 to 120 new inquiries a week and accepted representation of approximately 70 new divorce cases a week, or approximately 3,600 cases a year. Initally, respondent filed all of the cases in [     ] County, although a recent venue modification have resulted in his cases being filed in various jurisdictions.

The charges which were subject of this proceeding relate generally to the propriety of respondent's advertising copy and three separate charges that he personally altered, or required his employees to al-

ter, dates on client consent forms so that said affidavits would appear to have been filed within 30 days of the dates they were signed by the clients.

A. Charge One:

Charge one alleged that respondent violated D.R. 1-102(A)(4) — as the result of misleading advertising concerning his fee schedule relating to uncontested divorces. Charge one also alleges that respondent violated 7-101(A)(2) — involving an intentional failure to carry out a contract of employment with his clients, because in certain instances, the respondent notified his clients that their cases were on hold pending the receipt by him of additional fees. Petitioner contends that respondent's newspaper advertising, and various form letters that were sent to the clients after they responded to the ads, were misleading in that they did not completely explain, that if respondent was required to do anything in addition to the bare mimimum, there would be a separate charge. This practice extended to activities such as telephone inquiries about the status of the case. Although the possibility of additional charges was referred to in various notices, petitioner argues that they were not sufficiently specific and were, therefore, misleading.

The second area of concern petitioner questioned was respondent's practice of holding the divorce proceedings in abeyance until the additional charges were paid. In the petitioner's view, respondent had no right to discontinue work on the case, and therefore such forbearance constituted and intentional failure to carry out a contract of employment under D.R. 7-101(A)(2). As noted by the hearing committee, prior to the institution of these proceedings, respondent was notified by petitioner

that his practice of sending hold letters was questionable and respondent discontinued that practice.

## B. Charge Two:

Charge two alleged respondent was responsible for intentional alteration of the dates of two client consent forms involving the same divorce and that, when the alteration was questioned by the court, respondent falsely testified that he had received the affidavits from his client in their altered form. It was also charged that he subsequently improperly induced the client to sign an affidavit in an attempt to support his statements to the court. In Charge two, respondent is alleged to have violated D.R. 1-102(A)(4), D.R. 1-102(A)(6), D.R. 7-102(A)(4), D.R. 7-102(A)(5), D.R. 7-102(A)(6), and D.R. 7-102(A)(7).

In 1981, respondent was retained to represent [B] for the purpose of filing a consent divorce. The divorce was processed under section 201(c) of the Divorce Code, which provides for the filing of affidavits of consent from both parties. These consent affidavits must be executed within 30 days of the date that the affidavit is filed. The testimony indicated that prior to November, 1981, the court personnel were accepting affidavits that were more than 30 days old but this practice was discontinued in approximately November of 1981. Therefore, if respondent had unfiled affidavits of consent that were more than 30 days old they were not acceptable and respondent was required to request new affidavits from his client. The testimony of several witnesses revealed that in order to avoid this inconvenience, respondent instructed certain members of his staff to alter the dates on the affidavits to make it appear that they had been signed within the appropriate 30 day period. One set of altered affidavits was the affi-

davits of [B] and [C], his wife. Both affidavits were altered to show that they had been signed on October 30, 1981, whereas the original date was October 23, 1981. Respondent did not deny that the affidavits were altered, but contended they were altered by an employee to cover up for her own mistake.

When the [B] file was presented to the Honorable [D] of the Court of Common Pleas of [   ] for review and issuance of a decree, the very obvious alterations were observed and respondent was called before the court and asked to explain the alterations. Respondent testified that at the time the affidavits were received by his office he was in the habit of personally reviewing the mail each morning and specifically remembered opening the envelope from [B]. He personally recalled that he observed the alterations and accordingly testified that the alterations were not made by him or by any member of his staff, but were in fact made by the client. The hearing committee concluded that this testimony of respondent before Judge [D] was knowingly false. Subsequently, in order to support his testimony before the court, respondent obtained an undated affidavit from his client which stated that the consent affidavits had been signed on October 30, 1981, and that the corrections in said dates had been made by the parties. This follow-up affidavit could not have been correct unless the consent affidavits were originally postdated because they were received by respondent in his office in an envelope that was postmarked October 27, 1981. [B] testified as a witness for petitioner and stated that the affidavits were not altered by him or his wife and that the subsequent follow-up affidavit that he submitted stating that the [B] had made the alterations was prepared by respondent and that he, [B], signed it at the direction of respondent. The hearing committee

concluded that respondent prepared, obtained the signing of, and submitted to the court, an affidavit from [B] which he knew to be false.

C. Charge Three:

In Charge three, respondent is alleged to have been personally responsible for the alteration of a client consent form, and in filing said altered consent form in court, and with refusing to proceed with the client's divorce until certain charges were paid. In Charge three, respondent is alleged to have violated D.R. 1-102(A)(4), D.R. 1-102(A)(6), D.R. 6-101(A)(3), D.R. 7-101(A)(2), D.R. 7-102(A)(4), and D.R. 7-102(A)(6).

Charge three deals with the representation of [E] for the processing of a section 201(c) consent divorce under the Pennsylvania Divorce Code. Although [E] did not testify at the hearing, it was stipulated by the parties that if she were to testify she would state that she did not alter the affidavits of consent submitted by her and her husband, nor had she authorized respondent or any of his staff to do so. The affidavits were admittedly altered. The hearing committee concluded that the [E] affidavits were altered with respect to the dates and that said alterations occurred at respondent's direction or with his consent and knowledge. The hearing committee further concluded that respondent had testified falsely before the committee regarding the alteration of the [E] affidavits.

D. Charge Four:

Charge four alleged respondent was responsible for the intentional alteration of affidavits of consent and the filing of said affidavits in their altered form. In Charge four respondent is alleged to have violat-

ed D.R. 1-102(A)(4), D.R. 1-102(A)(6), D.R. 6-101(A)(3), D.R. 7-102(A)(4), and D.R. 7-102(A)(6).

Respondent was retained by [F] regarding an uncontested divorce. On September 25, 1981, both [F] and her husband executed the affidavits of consent and returned them by mail to respondent. As a result of an inquiry by [F] to respondent's office, it was determined that the affidavits of consent had not been filed and were at that point more than 30 days old. [G], respondent's office manager who had personally talked with [F], advised respondent that the affidavits of consent were stale, whereupon respondent personally altered the dates on the affidavits of consent from September 25, 1981 to October 30, 1981 in the presence of [G]. These affidavits were then filed with the prothonotary on November 30, 1981. Said affidavits were subsequently rejected and it was necessary to file new affidavits in May of 1982. The hearing committee concluded that respondent personally altered the [F] affidavits so as to change the dates thereon in order to allow said affidavits to be filed. The committee further concluded that respondent knowingly and deliberately testified falsely before the committee when he denied that he had personally altered the [F] affidavits.

### III. DISCUSSION:

In his attack upon the opinion and recommendations of the hearing committee, respondent contends that the hearing committee applied a preponderance of the evidence standard rather than the clear and satisfactory proof standard as required by this court and, further, that the findings of the hearing committee were not supported by the evidence submitted. This court has established that a lawyer's unprofessional conduct must be established by proof that is "clear and satisfactory." See, e.g., Of-

fice of Disciplinary Counsel v. Kissel, 497 Pa. 476, 442 A.2d 217 (1982); Office of Disciplinary Counsel v. Grigsby, 493 Pa. 194, 425 A.2d 730 (1981); In re: Berlant, 458 Pa. 439, 328 A.2d 471 (1974). In its report, the hearing committee did not define the evidentiary standard it was applying. That omission, however, in no way supports the conclusion that the wrong standard was applied. A detailed review by this board of the evidence submitted before the hearing committee as well as perusal of the hearing committee report disclose no support for respondent's contention that an erroneous standard was applied.

In fact, the basis of respondent's argument appears to be that the hearing committee made findings of misconduct, the findings of misconduct are contrary to the weight of the evidence, and therefore, a relaxed standard of proof must have been applied by the committee. After an independent review of the record the board concludes that the findings of the hearing committee are clearly supported by the evidence presented and respondent's contentions are unfounded. In most instances the alterations on the affidavits in question are readily apparent. The evidence that respondent altered the affidavits or caused them to be altered is clear and convincing. Similarly, the conclusion of the hearing committee, that respondent's testimony before the Honorable [D] was without factual basis, is clear. Furthermore, the hearing committee's conclusion, that the erroneous testimony before Judge [D] as well as the respondent's testimony before the hearing committee relative to the affidavits involved in Charges three and four was intentionally false, is clearly justified by the record. The hearing committee was in a position to evaluate the demeanor of the various witnesses, including respondent, and to re-

solve the conflicts in testimony among respondent, his present employees, and his former employees. We find no basis for disturbing the determinations of the committee with respect to the violations found.

Respondent further contends that the evidence of prior incidents of discipline, which were admitted at the hearing on September 9, 1983, tainted the comittee's findings with respect to the violations. Respondent contends that Disciplinary Board Rule 89.151 transgresses contemporary notions of fundamental fairness so as to constitute a violation of due process of law under the Pennsylvania and United States constitutions. Prior to the committee's letter dated July 28, 1983 advising the parties that it had made a finding of general misconduct in the case and wished to reconvene the hearing for the taking of testimony on the question of discipline, no revelation had been made to the committee regarding prior incidents of discipline. Thereafter, when the matter was reconvened on September 9, 1983 and November 3, 1983 for the purpose of considering discipline, the committee was advised of respondent's prior record of informal admonitions. Respondent contends that had such evidence, which was admitted for the purpose of assailing the accused's character and fitness to practice law, not been admitted until after the committee made specific findings of misconduct, it is entirely possible respondent would have been found guilty only of failing to adequately supervise his staff, or some similarly lesser offense.

Disciplinary Rule 89.151 was amended April 9, 1983. Section 89.151(a) currently provides:

"(a) General rule. The receipt of evidence which is relevant solely on the issue of the type of discipline to be imposed shall be deferred until after the

hearing committee has found that the evidence establishes a prima facie violation of at least one of the disciplinary rules or enforcement rules alleged in the petition for discipline to have been violated. However, the hearing committee need not specify the rule or rules found to have been violated before proceeding with the receipt of evidence under this rule."

At the conclusion of the hearing on the merits (completed on February 9, 1983) petitioner suggested that the hearing committee employ the procedures of section 89.151, as it is presently worded, and make a general finding of misconduct and then immediately proceed to receive evidence on the type of discipline to be imposed. Although the current language of 89.151 had not been adopted at that time, petitioner submitted to the hearing committee that the procedure proposed was customarily followed in disciplinary proceedings. After considering the suggestions of petitioner and the objections of respondent, the hearing committee stated that it "unanimously feels that [it] should not receive any evidence which relates to the type of discipline that may be appropriate . . . until after [it] . . . has had a chance to review the Briefs, review the testimony and come up with a definitive decision on the specific charges." The disciplinary proceeding was then recessed for several months. During this recess the current language of section 89.151(a) was formally adopted on April 9, 1983.

By letter of July 26, 1983, the hearing committee notified the board and the participants to the proceeding that it had found respondent "guilty of misconduct" in violation of the Code of Professional Responsibility. The committee further added that "No specific finding relating to any particular allegation is being made at this time. The committee requests

an additional hearing to hear evidence, if any, relevant to the type of discipline to be imposed. Following said hearing, specific findings relating to the allegations will be entered along with the recommendations as to discipline." The proceeding was again convened on September 9, 1983, for the purpose of receiving evidence relevant solely to the type of discipline to be imposed. Petitioner then proceeded, without further objection by respondent, to introduce numerous prior informal admonitions which had been administered to respondent. None of these prior incidents of final discipline involved conduct bearing on respondent's character for truth and veracity. Thereafter, the hearing committee filed its report on February 29, 1984. Therein, the committee specified its findings regarding the nature of respondent's conduct and recommended a one-year suspension. The committee again reiterated that it "had previously determined at the conclusion of the hearing in February [1983] that it preferred to reach a decision on the merits prior to receiving any evidence on the issue of discipline."

The board concludes that the hearing committee did not violate Disciplinary Board Rule 89.151 as it existed prior to April of 1983 or as it has existed subsequent to the April 1983 amendments. The committee, although it did not detail the specific violations involved, did make a decision on the respondent's misconduct prior to considering any prior indiscretions of respondent. There is no factual basis for concluding that the committee violated its obligations in this regard. We are, therefore, faced with the issue of whether Disciplinary Board Rule 89.151(a) comports with due process.

In support of his contention that section 89.151(a) does not satisfy due process, respondent has cited Commonwealth v. Conti, 236 Pa.Super.

448, 345 A.2d 238 (1975), and Commonwealth v. Spruill, 480 Pa. 601, 391 A.2d 1048 (1978). Those cases discussed the importance of not tainting criminal proceedings by having the fact finder learn of confessions and/or evidence of prior criminal acts prior to a determination of guilt. It must be noted that, although disciplinary proceedings are not criminal in nature, they have been styled as quasi-criminal, Office of Disciplinary Counsel v. Campbell, 463 Pa. 472, 478 345 A.2d 616, 620 (1975). This court has emphasized the unique nature of disciplinary cases in determining which procedural and substantive rights attach. Therefore, not all of the due process rights that might be appropriate in criminal cases pertain to disciplinary cases. A strict bifurcated procedure in disciplinary cases is not necessary to meet due process standards. The ability of a hearing committee to segregate evidence must be relied upon. Otherwise, hearing committees would be required to prepare separate written reports, one specifying the charges proven and then a subsequent report, after another hearing for receipt of evidence on the type of discipline, setting forth the hearing committee's recommendations as to the type of discipline to be imposed. The requirement that the hearing committee announce "that the evidence establishes a prima facie violation of at least one of the disciplinary rules or enforcement rules alleged in the petition for discipline to have been violated" prior to the introduction of evidence regarding prior offenses, assures the accused attorney of a fair and impartial trial. To require a separate written report at the conclusion of the first phase would be a serious detriment to the efficiency and economic feasibility of the disciplinary system. We do not believe that the authority cited by respondent requires that result.

We turn now to the exceptions filed by petitioner. With respect to petitioner's contention that the violations alleged in Charge one were substantiated, we have concluded that the hearing committee was justified in dismissing those charges and its decision in that regard should not be disturbed.

With respect to petitioner's contention that the findings of misconduct warrant disbarment, more serious concerns are presented. In this regard we adopt the rationale of the hearing committee as follows:

"While the committee does not in any way condone the Respondent's conduct in the [B], [E] and [F] cases, the Committee was more troubled by the Respondent's perjured testimony before Judge [D] as well as what we find to be perjured testimony when he testified before the Committee. We can speculate that there may have been some practical, even though unacceptable, explanations for Respondent taking short cuts in his practice where he may have assumed that no harm to his clients would result. However, there is no acceptable explanation whatsoever for an attorney and officer of the Court, when called upon to explain his actions, deliberately testifying falsely and to continue to do so in an attempt to defend himself against charges of improper conduct, one of which included an allegation of perjury in a previous Court proceeding (Report of Hearing Committee, Page 13)."

Respondent's testimony regarding the alleged defenses clearly presents more serious offenses than the indiscretions about which he testified.

## IV. FINDINGS OF FACT:

The Disciplinary Board of the Supreme Court of Pennsylvania makes the following findings of fact:

A. Charge One:

1. Petitioner, whose principal office is located at the Commerce Building, 300 North Second Street, Harrisburg, Pa., 17101, is invested, pursuant to Rule 207 of the Pennsylvania Rules of Disciplinary Enforcement, with the power and the duty to investigate all matters involving alleged misconduct of an attorney admitted to practice law in the Commonwealth of Pennsylvania and to prosecute all disciplinary proceedings brought in accordance with the various provisions of the aforesaid rules.

2. For some time since enactment of the Pennsylvania Divorce Code of 1980, respondent has engaged in widespread advertising of his legal services to pursue "divorces" for a specified "total price" including all costs, or else for a (usually lower) specified fee, plus (undefined) "costs".

3. Respondent's customary practice, in response to inquiries concerning such ads, has been to advise individuals that his services were limited to pursuit of an uncontested divorce, based upon mutual consent or a three year separation, together with an invitation to return preparatory forms to his office, along with a partial payment of the fee or total price quoted.

4. It has also been respondent's customary practice that once retained and partially paid an agreed amount to pursue an uncontested divorce, he then advised his clients that, if they made any "routine", "non-emergency or non-essential" telephone calls to his office in regard to the status of their divorce proceeding, he would levy an additional charge.

5. Various clients of respondent received written notices from respondent stating his intention to enforce a delay in the pursuit of their respective divorce cases, pending receipt by him of more money, because the clients had each contacted the respond-

ent by telephone call(s) which respondent deemed to be "routine", "non-emergency or non-essential" and thereby incurred an additional charge.

6. Respondent apparently discontinued (in or about November, 1981) the practice of threatening to withhold pursuit of clients' divorces pending additional payment.

### B. Charge Two:

7. On or about July 14, 1981, respondent filed a complaint in divorce under §201(c) of the "No-Fault" Divorce Act on behalf of [B].

8. On or about November 30, 1981, respondent filed or caused to be filed two affidavits of consent, one on behalf of respondent's client, [B], and the other on behalf of dependent in the divorce action, [C].

9. Subsequently, when the original [B] file was being reviewed by a judge's law clerk, irregularities were noted on the affidavits of consent. Specifically,

(a) the date of [B's] Affidavit of Consent had been altered from "10/23/81" to "10/30/81", by writing over the 23 and changing it to 30.

(b) on the Affidavit of Consent of [C], the date "10/23/81" had been "whited-out" and the date 10/30/81 had been inserted.

10. The dates (as altered) on the affidavits of consent purported that said affidavits were valid for filing on November 30, 1981, pursuant to Pa.R.C.P. 1920.42(a) (2) (ii) (requiring that affidavits of consent must have been executed within 30 days of the date of filing).

11. On March 15, 1982, respondent was called to testify before the Honorable [D] regarding the alterations of the affidavits of consent. At such time, respondent testified that:

(a) The affidavits of consent arrived at his office by mail already in the altered condition.

(b) He personally reviewed the mail that came in at that time, noticed the sloppiness of the alterations, but decided to submit the affidavits of consent to the court because his client was "probably in a hurry".

(c) No one from his office, to his knowledge, changed the dates of the affidavits of consent.

(d) He had in his possession the envelope wherein the subject affidavits of consents were sent to him and he offered it to the court. Said envelope was postmarked in [   ] (the area of residence of [B] and [C]) on October 27, 1981 and received by respondent's [   ] office on October 29, 1981.

12. Thereafter, respondent procured an affidavit from [B] which stated that the affidavits of consents were "duly signed and dated on October 30, 1981, corrections in said dates having been made by the parties on their respective affidavits", and which was patently false when compared to the documented fact that the envelope which transmitted the affidavits of consent to [   ] had been postmarked in [   ] before October 30, 1981, namely, on October 27, 1981.

13. Respondent submitted this false affidavit of [B] to the court on or about May 3, 1982 for the purpose of inducing the court to enter a final divorce decree.

14. The dates on the affidavits of consent were altered by:

(a) Respondent personally; or

(b) A member of Respondent's staff with Respondent's direction, consent or knowing acquiescence;

or

(c) A member of Respondent's staff under circumstances reflecting that Respondent had failed to adequately instruct and/or supervise his employee(s).

## C. Charge Three:

15. Sometime in or about mid-March, 1981, respondent was retained by [E] to handle a divorce matter for her.

16. In or about September, 1981, [E] received two unexecuted affidavits of consent from respondent's office.

(a) [E] executed one affidavit shortly before September 24, 1981, and had her husband execute the other on or about September 24, 1981.

(b) She then returned both affidavits to respondent's office in or about early October, 1981.

17. The actual execution date (of late September, 1981) on [E's] affidavit of consent was "whited-out" and "10/30/81" inserted thereon, thereby purporting it to be valid for filing on November 30, 1981, consistent with Pa.R.C.P. 1920.42(a)(2)(ii).

18. The date on [E's] affidavit of consent was altered by:

(a) Respondent personally; or

(b) A member of respondent's staff with respondent's direction, consent, or knowing acquiescence; or

(c) A member of Respondent's staff under circumstances reflecting that Respondent had failed to adequately instruct and/or supervise his employee(s).

## D. Charge Four:

19. In or about June, 1981, respondent was retained by [F] of [ ], Pa., to handle an uncontested (no-fault) divorce action.

20. On September 25, 1981, [F] received two blank affidavits of consent from respondent, and she and her husband executed them pursuant to respondent's directions and returned them by mail the same day.

21. Respondent filed the affidavits of consent on November 30, 1981. The dates on the affidavits of consent had been altered from "9/25/81" to "10/30/81", thereby purporting them to be valid for filing by November 30, 1981.

22. [F] and her husband, [H], had not altered the dates on their original affidavits of consent, nor had they authorized respondent or anyone else to do so.

23. The dates on the affidavits of consent were altered by:

(a) Respondent personally; or

(b) A member of respondent's staff with respondent's direction, consent, or knowing acquiescence; or

(c) A member of respondent's staff under circumstances reflecting that respondent had failed to adequately instruct and/or supervise his employee(s).

## V. CONCLUSIONS OF LAW

The Disciplinary Board of the Supreme Court of Pennsylvania makes the following conclusions of law in this proceeding:

A. Charge One:

1. The board adopts the conclusion of the hearing committee that the conduct of respondent complained of in Charge one was not in violation of any of the Disciplinary Rules of the Code of Professional Responsibility.

## B. Charge Two

2. Respondent's conduct and representation of [B] was in violation of D.R. 1-102(A)(6) concerning conduct which adversely reflects upon his fitness to practice law.

3. Respondent's conduct was in violation of D.R. 7-102(A)(4), (5), (6), and (7), in that he knowingly used false evidence, and knowingly made false statements in the representation of his client, and knowingly participated in preparation of evidence which he knew was false, and counseled his client in a course of conduct which he knew to be false.

4. Respondent has knowingly and deliberately testified falsely before the hearing committee in connection with his explanation of the alteration of the [B] affidavits and in his explanation that he was mistaken as to the true facts when he testified before Judge [D] in connection with the [B] affidavits.

5. Respondent's explanation before Judge [D] was knowingly false and his later explanation before the Committee as to what happened in connection with the [B] affidavits, although different from his testimony before Judge [D], was equally false.

## C. Charge Three

6. The affidavits of consent with respect to the [E] divorce were altered with respect to the dates and said alteration occurred at respondent's direction, or with his consent and knowledge.

7. Respondent testified falsely before the committee regarding the alteration of the [E] affidavits.

8. In connection with the representation of [E], respondent violated D.R. 1-102(A)(4) and (6), D.R. 7-102(A)(4) and (6).

## D. Charge Four

9. With respect to the [F] divorce, respondent personally altered the affidavits of consent so as to change the dates thereon in order to allow said affidavits to be filed on a purported timely basis.

10. Respondent knowingly and deliberately testified falsely before the hearing committee when he denied that he had personally altered the [F] affidavits.

11. Respondent's conduct with respect to his representation of [F] was in violation of D.R. 1-102(A)(4) and (6), and D.R. 7-102(A)(4) and (6).

## VI. RECOMMENDATIONS

The Disciplinary Board recommends to the Supreme Court of Pennsylvania that respondent, [   ], be suspended from the practice of law for a period of one year with said period of suspension to run consecutively to the period of suspension previously imposed by this court in the proceedings at no. 25 D.B. 83. It is further recommended that the court direct that all necessary expenses incurred by this board in the investigation and processing of the petition for discipline be borne by and paid for by said respondent. (A statement of such expenses is appended to this report).

Sidney L. Krawitz and George F. Douglas, Jr. did not participate in the adjudication.

## ORDER

NIX, C. J., And now, this August 2, 1985, upon consideration of the recommendation of the Disciplinary Board dated July 9, 1985, it is ordered that [respondent] be and is suspended from the Bar of the Commonwealth for a period of four years commencing April 8, 1981, and he shall comply with all

the provisions of Rule 217, Pa.R.D.E. It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.

Mr. Justice Hutchinson and Mr. Justice Papadakos dissent and would issue a rule to show cause why respondent should not be disbarred.