Commonwealth *v.* Frazier, Appellant.

Argued April 19, 1963. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN and O'BRIEN, JJ.

*Herman I. Pollock,* Defender, with him *Gary Charles Leeds,* for appellant.

*William F. Killeen,* Assistant District Attorney, with him *Arlen Specter,* Assistant District Attorney, *F. Emmett Fitzpatrick, Jr.,* First Assistant District Attorney, and *James C. Crumlish, Jr.,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE EAGEN, June 4, 1963:

The appellant, Robert Ogden Frazier, was tried on an indictment charging murder. The jury found him guilty of voluntary manslaughter. Motions in arrest of judgment and for a new trial were dismissed. He was sentenced to spend an indefinite term in a state

correctional institution, the minimum being fixed at two and one-half years and the maximum at five years.[1] From the judgment, this appeal was filed.

A study of the record discloses a most unusual factual background. The pertinent portions of the Commonwealth's evidence may be summarized as follows:

On February 4, 1960, about 1:00 o'clock a.m., the defendant aroused neighbors and told them that something terrible had happened to his wife, Sarah Frazier. The police were called about 1:15 o'clock a.m. and the first officer arrived at the scene about 1:19 o'clock a.m. Sarah Frazier's dead body was lying on the floor in the living room of her home at 2505 North Seventeenth Street in the City of Philadelphia. Rigor mortis was already evident in the ankles, wrists and jaws.[2] A superficial examination disclosed the presence of gunshot wounds. Twenty-two inches from the body a 32 calibre revolver was lying on the floor. It contained three empty casings and apparently had been fired three times. No finger prints were discernible on the gun, due to the roughness of the handle. A bullet hole was found in the wall of the dining room. Two discharged bullets were found, one in the dining room, one in the living room.[3] The house was neat, clean and in good array, except in the area of the hole in the wall of the dining room where plaster still remained on the floor. No evidence of a struggle was present.

---

[1] At the time of sentence on December 5, 1962, the defendant had been in jail continuously from the date of his arrest on May 19, 1961. The court correctly directed that he be given credit for this period of confinement.

[2] An investigator of the Medical Examiners' Office of the City of Philadelphia testified that rigor mortis is usually found to set in approximately four to six hours after death.

[3] Later on in the day (February 4), the defendant took another bullet to police headquarters which he said he found in the home.

The defendant was questioned and stated that on February 3rd he had arrived at his home on Seventeenth Street about 5:45 o'clock in the late afternoon; that his wife returned from work about 7:00 o'clock in the evening; that he left the home about 8:00 p.m. and that his wife was alive. He visited friends in another section of the city until about midnight and upon returning to his home about 1:00 o'clock a.m. on February 4th, discovered his wife's body.

Beginning at 10:00 o'clock a.m. on February 4, a complete medical examination was made of the body. An autopsy revealed the presence of two gunshot wounds: one of which penetrated the left breast, traveled slightly downward and forward exiting through the skin adjacent to the breast and was of no serious consequence; the second penetrated the upper portion of the abdomen and certain vital organs of the body before exiting through the back. This latter described wound was the cause of death. A ballistic expert opined that the gun which was used to fire both shots was less than one inch away from the decedent's clothing when fired. A bruise or discoloration was also found on the left cheek. The medical examiner concluded that this bruise may have occurred post-mortem in the handling of the body. He also stated that the gunshot wounds could have been self-inflicted, or inflicted by another person.

The autopsy also revealed the presence of a small quantity of alcohol and the drugs phenobarbital and salicylate in the blood and urine, and indicated consumption sometime within three hours of the moment of death. The time of death could not be fixed.

Subsequently, the police made an intensive investigation. It was revealed that the deceased had been suffering from the disease of tic douloureux or trigeminal neuralgia in the face or head, which is accompanied by severe sharp pain. No evidence was

discovered to establish with any degree of reasonable certainty the manner or circumstances of the death. The gun involved was placed in an envelope marked "suicide" and filed among police records where information of such cases is retained.

In the latter part of 1952, the defendant began an illicit relationship with one, Miss Beatrice Banks. He cohabited with her in an apartment for which he paid the rent, partially supported her, and fathered two children born to her. In July 1959, he purchased real estate at 2445 North Sydenham Street in the City of Philadelphia about one and one-half blocks from where his legally wedded wife resided, represented Miss Banks as his wife to the people involved in the transaction, and caused the title to be recorded in both names. Two mortgages were executed by the parties as husband and wife. The defendant and Miss Banks established a residence at this address.

In the latter part of 1959, arguments and trouble began in this relationship. On April 6, 1960, Miss Banks moved from the Sydenham address and took up abode with her mother at 70 East Walnut Lane in the Germantown section of Philadelphia. After she left Sydenham Street, the defendant threatened the safety of Miss Banks on several occasions. In September and November 1960, the parties were involved in hearings in the Municipal Court of Philadelphia concerning the custody of the children wherein the defendant charged that Miss Banks was an unfit mother. During 1960, warrants were caused to be issued and countercomplaints filed by one party against the other. In April 1961, Miss Banks caused a warrant to be issued charging the defendant with threats to kill. At or about the same period of time, he caused a warrant to be issued charging her with larceny of furniture from the Sydenham address. These issues came on for hearing before a judge on May 18, 1961, and through an

amicable understanding entered into by the attorneys, the charges were withdrawn.

On March 31, 1961, the defendant attempted to gain admittance to the residence on East Walnut Street, but Miss Banks and her mother refused to open the door. The defendant threatened to break in and yelled through the door from the outside, "I am going to kill you if it is the last thing I do, you rotten bitch. I killed Sarah and got away with it and I'll do the same thing to you and get away with it." She immediately reported this threat to the lawyer representing her in the domestic troubles and on April 11, 1961, gave a statement to the police. As a result, the investigation of the death of Sarah Frazier was reopened and the defendant arrested for homicide on May 19, 1961.

At trial, Miss Banks and her mother testified to hearing the defendant say on March 31, 1961, that he had killed Sarah Frazier, as related above. Miss Banks further testified that on February 4, 1960 (the morning Sarah Frazier's death was reported) that the defendant appeared at her home on Sydenham Street about 12:25 o'clock a.m. and told her that his wife Sarah had killed herself and that he was then going over to a neighbor's house and pretend that he had just found the body. While the record is not clear on this facet of the case, it appears that she did not reveal this information to the police when questioned during the original investigation of the case. Evidence was also introduced to show that the defendant suffered from some financial difficulty at the date of his wife's death, and that on February 5, 1960, he presented and cashed a check apparently signed by her and drawn on her bank account in the sum of $750. (The account totalled approximately $780). The check was dated February 2, 1959. A police officer testified that when questioned about this transaction, the defendant admitted forging his wife's signature.

At trial, the defendant entered a denial. He admitted his relationship with Miss Banks for several years. His version of their troubles and the cause thereof was opposite to her testimony. He categorically denied being near the East Walnut address on March 31, 1961, and making the statements or threats attributed to him on that occasion. He also presented the testimony of witnesses accounting for his whereabouts from about 9:00 o'clock p.m. on the night of February 3rd until one o'clock a.m. in the early morning of February 4, 1960, which corroborated his testimony that he was not in the neighborhood of his wife's home on North Seventeenth Street during these hours. He further denied visiting Miss Bank's residence on February 4th, and telling her his wife was dead. He explained the presence of the bullet hole in the wall of the dining room of his home by stating that Sarah Frazier had accidently discharged the revolver kept in the home on the night of February 2nd, the day previous to her death. This explanation was in accordance with his original statements to the police.

The request for arrest of judgment was properly overruled. In considering such a motion, the evidence must be read in the light most favorable to the Commonwealth's case. The test of the sufficiency of the evidence, irrespective of whether it is direct or circumstantial, is whether accepting as true all of the evidence, upon which if believed the jury could properly have based its verdict, it is proven beyond a reasonable doubt that the defendant is guilty of the crime charged: *Commonwealth v. Blanchard*, 345 Pa. 289, 26 A. 2d 303 (1942); *Commonwealth v. Kravitz*, 400 Pa. 198, 161 A. 2d 861 (1960). The truth of the testimony as to the defendant's admission of guilt, while giving one cause to pause and to hesitate in view of all the circumstances, was for the jury. We cannot disregard it as a matter of law. The admission of the

defendant as related by Miss Banks and her mother was correctly admitted. After the corpus delicti is established, an admission or confession by the defendant connecting him with the crime is competent and admissible. The corpus delicti consists of proof that a human being is dead and that such death took place under circumstances which indicate criminal means or the commission of a felonious act: *Commonwealth v. Fletcher,* 387 Pa. 602, 128 A. 2d 897 (1956); *Commonwealth v. Deyell,* 399 Pa. 563, 160 A. 2d 448 (1960); *Commonwealth v. Ross,* 403 Pa. 358, 169 A. 2d 780 (1961); *Commonwealth v. Burns,* 409 Pa. 619, 187 A. 2d 552 (1963). Like other facts, it may be established by circumstantial evidence: *Commonwealth v. Homeyer,* 373 Pa. 150, 94 A. 2d 743 (1953), and *Commonwealth v. Bolish,* 381 Pa. 500, 113 A. 2d 464 (1955). The corpus delicti is sufficiently established if the circumstances of the death are consistent with crime, even though they may also be consistent with suicide: *Commonwealth v. Gardner,* 282 Pa. 458, 128 A. 87 (1925); *Commonwealth ex rel. Lagana v. Day,* 385 Pa. 338, 123 A. 2d 172 (1956); *Commonwealth v. Fletcher,* supra; *Commonwealth v. Homeyer,* supra, and *Commonwealth v. Kravitz,* supra. It is not necessary to show by affirmative proof that the possibility of suicide does not exist: *Commonwealth v. Homeyer,* supra; and *Commonwealth ex rel. Lagana v. Day,* supra.

While in view of the evidence, the verdict of voluntary manslaughter is difficult to understand, such a verdict is strictly within the jury's prerogative, and may be returned even in the absence of evidence of sufficient provocation and passion if the evidence as a whole is sufficient to warrant the defendant's conviction of murder: *Commonwealth v. Steele,* 362 Pa. 427, 66 A. 2d 825 (1949), and *Commonwealth v. Nelson,* 396 Pa. 359, 152 A. 2d 913 (1959).

However, there is prejudicial error in the charge of the trial court which requires the grant of a new trial. While the evidence was amply sufficient to establish the existence of the corpus delicti, it was also consistent with and did not rule out the possibility of suicide. Whether the death was due to suicide or caused by the felonious act of another was one of the main issues to be determined. It was, therefore, logical and incumbent upon the jury to resolve this question in the first instance. The defendant's connection with the crime was the next question for decision. In conjunction with this last question, his admissions were significant and for the jury's consideration together with all of the evidence. However, where, as here, the evidence is in doubt as to the manner or the cause of death, the question of the existence of the corpus delicti should first be determined without consideration of the defendant's admission of guilt. See, *Gray v. Commonwealth,* 101 Pa. 380 (1882), and *Commonwealth v. Puglise,* 276 Pa. 235, 120 A. 401 (1923). Under the singular facts this case presents, the jury should have been so instructed in crystal clear terms. Unfortunately, this was not done. A specific request for such instruction was answered by the court in the following manner: "Now, I have also been asked to charge you that before you consider the admission or confession made to Beatrice Banks and in the presence of Hixie Somerville, you must find that Sarah Frazier met her death in a criminal way. Well, I thought I had charged you rather fully on that subject but I did not say it in quite that way. What I said was that you must first determine whether or not Sarah Frazier was killed by the defendant—that is what I said—or was shot by the defendant. But if you were to determine that Sarah Frazier was a suicide, or if you have a reasonable doubt as to that, then the admission or confession to Beatrice Banks was, of course, of no avail. Or if you

determine that she met her death—Sarah Frazier met her death in some other manner other than in a criminal way you cannot consider the admission or the confession either. It is only to be considered by you along with all the other evidence in the case if you believe that this defendant is the defendant who committed this crime upon his wife. If you believe that—and, of course, you consider all of the evidence—if you believe that he did commit this crime upon his wife and you believe that beyond a reasonable doubt, then you would consider whether or not he made this admission to Beatrice Banks or whether, as he said, he did not say it at all."

While the above quoted portion of the charge was correct in part, taken in its entirety it is confusing and certainly could be construed to mean that all of the evidence including the defendant's admission was to be considered in determining if a felonious death occurred.

That the jury was confused is clearly indicated by the fact that they later returned to the courtroom and asked for further explanation of this particular portion of the charge. The trial judge, instead of correctly clarifying the issue, then said in part: "It is only if you believe, considering all the testimony in the case, Sarah Frazier met her death as the result of a criminal act and that the defendant is the person who committed that act, it is only if you believe that beyond a reasonable doubt that then you will apply the law as I have given it to you." Following this a juror asked another question in reference to the same subject. The court answered: "[I]n a case like this you cannot just pick facts out, one thing here and one thing over there and on that basis make your determination. You must consider all of the testimony—all of the exhibits and all of the testimony. You consider all of it. Deliberate upon it carefully. In referring to the state-

ment made by Beatrice Banks which she alleges the defendant made, I merely called this to your attention, but by no means do I mean you should restrict your deliberations to that."

A consideration of the above leads to the conclusion that the questions for decision were not clearly stated, and probably not understood. That issues be clearly defined in order that they may be fully comprehended is one of the basic requirements of a fair trial. See, *Pleasant v. Carr*, 387 Pa. 634, 130 A. 2d 189 (1957), and *Commonwealth v. Jordan*, 407 Pa. 575, 181 A. 2d 310 (1962).

Judgment reversed and new trial granted.

Mr. Chief Justice BELL dissents.

Mr. Justice ROBERTS took no part in the consideration or decision of this case.