Commonwealth v. Temple

*John A. Harris,* for Commonwealth.

*Arthur C. Dale* and *John Woodcock,* for defendant.

CAMPBELL, P. J., November 3, 1965. — In a multiple count bill of indictment, the jury found defendant guilty on two counts of obstructing an officer in the execution of process: 18 PS §4314. Defendant filed motions for a new trial and in arrest of judgment.

In considering motions of defendants for a new trial and in arrest of judgment following conviction, the court must accept as correct the testimony submitted by the Commonwealth, as well as the reasonable inferences which can properly be drawn therefrom: Commonwealth v. Jackson, 187 Pa. Superior Ct. 2.

In passing upon a motion in arrest of judgment, the court must ignore the evidence of defendant, which the fact finder had the privilege of rejecting, and must accept as correct all the evidence which supports the verdict: Commonwealth v. Lees, 199 Pa. Superior Ct. 383.

The test of the sufficiency of the evidence is whether accepting as true all of the evidence, upon which, if believed, the jury could properly have based its verdict, it is proven beyond a reasonable doubt that defendant is guilty of the crime charged: Commonwealth v. Frazier, 411 Pa. 195.

Under the Act of June 15, 1951, P. L. 585, in considering a motion in arrest of judgment, the court must consider the entire record and determine whether there is sufficient evidence to establish the guilt of defendant, and the court does not have power to pass upon the credibility of the witnesses or to determine whether it would have arrived at the same verdict as the jury did; it must, therefore, after a verdict of guilty, accept as true all of the Commonwealth's evidence upon which the jury could have based its verdict: Commonwealth v. Nichols, 206 Pa. Superior Ct. 352.

Guided by these principles, the record supports the following facts:

It is admitted that a valid writ of replevin with bond was issued to the sheriff commanding him to replevy a certain color television set. Armed with the original and two copies thereof, the sheriff, with his deputy, went to the residence of defendant, rang the doorbell and got no response. He then left, and upon coming back later, he saw defendant's wife in the house. He rang the doorbell, and the door was answered by defendant's son, who then called his mother to the door. The sheriff told her who he was, that he had a writ of replevin, read the caption to her and proceeded to serve the papers upon her. She informed the sheriff that he could not have the television set, that he would have to see her husband. The sheriff informed her that he would wait a few minutes for her to call her husband. It does not appear that defendant's wife reached him by phone, but regardless of this fact, defendant appeared three or four minutes later. During all this period, the front door of defendant's home remained partially open. When defendant came to the doorway of his home, the sheriff related that the following events and conversations occurred:

"I repeated my story to him which I had done on a couple of other occasions to the boy and Mrs. Temple, told him what I had, that I had a writ of replevin with bond, the First National Bank, Assignee of Hurwitz Furniture Company v. Billy N. Horner and Carl Temple. Mr. Temple informed me that I wasn't getting the television set. I told him that he knew what a writ of replevin with bond was, that I would have to come in and take the set. He informed me that I wasn't coming in and he said that he was sick, and I said 'So am I.' That was the end of our conversation on the sickness. I said, 'To save embarrassment, Carl, just give us the television set and we will pick it up and take it and

nobody will know anything about it around here.' He said, 'No, you are not getting it, you are not coming in.' "

The deputy sheriff testified that Mr. Temple told them, "You are not going to get it, I have an execution against it myself, you will have it tomorrow", or words to that effect. After this preliminary discussion, the sheriff and his deputy attempted to push defendant aside in order to execute the replevin writ. Defendant resisted to the point where a scuffle ensued, breaking the glass out of a vestibule door and injuring the sheriff with the broken glass. The sheriff was actually struck and resisted by defendant. The encounter was quite spirited. The sheriff and his deputy then pulled defendant out onto the porch and attempted to place him under arrest without a warrant for obstructing their execution of a legal process. While doing so, defendant continued to struggle and resist. On the way to jail, defendant offered to give the television set to the sheriff. Defendant was then charged with a number of counts in violation of the Act of June 24, 1939, P. L. 872, sec. 314, as amended, 18 PS §4314.

It seems clear from the testimony that the sheriff had a valid writ of replevin with bond, that he served it upon defendant's wife and that defendant was fully informed of the existence of the writ and the purpose for the sheriff's visit, although the writ was not actually served upon him or exhibited at the time the sheriff attempted to gain admittance to defendant's home.

Although defendant's motions for a new trial and in arrest of judgment contain some 16 reasons therefor, only one was pressed at the time of argument. Defendant contends that the court erred in affirming points 1, 2, 3, 4 and 5 of the Commonwealth. These points, as requested by the Commonwealth and modified by the court, are as follows:

1. Officers charged with a service of process should

be and are under the protection of the law. To intimidate them by use of threats accompanied by an exhibition of physical power and an apparent intent to use it, while defending the execution of process, is a crime. It is not necessary that there should be a blow struck or force actually applied, although it is essential that the resistance should imply the application of force, actual or threatened. Mere vituperation not constituting the offense does not constitute the offense unless there be an apparent intention to resist by force, but whether process be criminal or civil, resistance to its execution, whereby such execution is hindered, is unlawful.

2. In the event you find that the sheriff did not show the writ of replevin with bond to Carl E. Temple, if he made himself known or his purpose known and that he had a writ, defendant had no right at that point to resist its execution.

3. If you find that the sheriff had a writ of replevin with bond which ordered him to pick up a color TV set, and if you find that defendant knowingly and willfully assaulted him when he was about to execute the writ, you may find defendant guilty.

4. If you find that the sheriff had a writ of replevin with bond, which ordered him to pick up the color TV set, and if you find that defendant knowingly, willfully and purposefully obstructed, resisted and opposed the sheriff in serving or executing the legal process, said defendant is guilty of count number 1.

5. Even though the prosecutor, the sheriff in this case, might be liable in a civil action, in the event he might have gone beyond the scope of his writ, defendant was not justified in forcibly obstructing, resisting or opposing the sheriff in his execution of the writ, if he did it knowingly and willfully.

The precise question to be decided is whether the service or exhibition of the writ of replevin by the

sheriff upon defendant personally is a prerequisite to a conviction for knowingly obstructing or resisting an officer in the execution of a legal process.

Stating the problem in a different manner, if the sheriff advises defendant of the contents of the writ, its purpose, and that he has the writ in his possession, may a defendant refuse the writ's execution without demanding to see the writ or have it served upon him?

The Act of June 24, 1939, P. L. 872, sec. 314, as amended, 18 PS §4314, provides, in part, as follows:

"Whoever knowingly, wilfully and forcibly obstructs, resists or opposes any officer or other person duly authorized, in serving or attempting to serve or execute any legal process or order, or in making a lawful arrest without warrant . . . is guilty of a misdemeanor. . . ."

We would hold that the crime of obstructing the enforcement of a legal process requires that defendant act with knowledge that he is resisting lawful process and an officer. This knowledge may be inferred from the circumstances, or shown by a statement made to defendant by the officer: 3 Wharton, Criminal Law and Procedure, §1285, 1957 ed., page 636.

Defendant was personally acquainted with the sheriff and his deputy. He was fully informed by the sheriff of the nature and purpose of his visit, to wit: that the sheriff was directed to replevy an RCA color television set. Defendant, therefore, knowingly, willfully and forcibly obstructed the sheriff and his deputy in the execution of the process, which he was commanded to serve. He did not demand to see the writ or challenge its validity. The writ had already been served on an adult member of defendant's household, in accordance with the rules of civil procedure. We, therefore, hold that it was not necessary for the sheriff to exhibit or serve his writ upon defendant in order to impute knowledge to defendant. The validity of the service of the

writ is not at issue. Defendant had knowledge of the writ directly from the sheriff, whom he personally knew.

Defense counsel have attempted to inject into this case constitutional provisions concerning civil rights by contending that defendant had the right to refuse the sheriff's entrance into his home without exhibiting his authority to enter, on the theory that a person's home is his castle. This case does not involve the search of a man's home under suspicious circumstances, which requires a search warrant. The door to defendant's home was not broken into by the sheriff; it was opened to him and remained open at all times while defendant was opposing and forcibly resisting the sheriff in the execution of his writ. This case does not involve a levy on any goods. It does not involve the replevy of any goods of which defendant claimed ownership at that time. Here, a person other than defendant claimed ownership of the television set and was attempting to secure it by lawful means. The principal purpose of replevin is to enforce the claim of an owner of property for its delivery to him by one who wrongfully detains it: 10 Standard Pa. Practice §430.

We are not here concerned with the legality of the writ or the manner of its service. Our concern is: Did defendant have knowledge of the legal process?

The facts indicate that defendant knowingly obstructed the sheriff by refusing to allow him to pick up the television set, which he was commanded to do. His resistance to his subsequent arrest without a warrant was likewise with full knowledge of the essential elements.

Since it is argued on behalf of defendant that he was justified in using force to resist the sheriff's entry into his home, the Commonwealth contends that the sheriff even had the right under the law of this State to break open doors to execute a writ of replevin. Since the door

of defendant's home was always open during the time when defendant is charged with resisting an officer, it would not here appear necessary to decide this question. We are convinced, however, that under the law of this State the sheriff has the right to break into a building for the purpose of executing a writ of replevin: Jones v. Herron, 1 Dist. R. 475; Commonwealth v. Valvano, 33 D. & C. 128; Kneas v. Fitler, 2 S. & R. 262. The Pennsylvania view of the common law is apparently based on Semayne's Case, 5 Coke 91, reported in 1 Smith, Leading Cases 213 (6th American ed.). The following language of Judge Arnold in the case of Jones v. Herron, supra, seems particularly appropriate in the instant case:

"The rule undoubtedly is that in executing civil process generally he (the sheriff) cannot break open doors or enter by force, but there are exceptions to it, of which replevin is one of the most important. The reason is that a man's house is his castle for the protection of himself and his property against civil process, as a writ of fieri facias to take his goods in execution, or a capias in a civil suit by a private person. For the command of the writ being to take his goods to sell them under a fi. fa., he is entitled to the protection his castle affords him; but in a writ of replevin the command is to take the goods of a plaintiff who has entered security for their return if he fails to prove his title to the property, and, under the common law and statute, the sheriff may break outer doors or enter by unusual ways for the purpose of executing the writ."

Since the sheriff has the right to break open doors to serve a writ of replevin, he would certainly have the right to enter, as in this case where the door was open, free from obstruction or resistance from the owner of the premises. The theory that a man's home is his castle is not absolute. It does not extend to the situation where goods of another are brought and conveyed

into his house to escape the ordinary process of law. Resistance to the lawful entry of a sheriff to execute process in a claim and delivery action constitutes a violation of a statute making it a misdemeanor to willfully resist, delay or obstruct a public officer in discharging, or attempting to discharge, any legal duty of his office: 3 Wharton, Criminal Law and Procedure, §1285, page 635.

In reviewing carefully Commonwealth's points for charge as modified by the court, we find no error. In fact, we feel that they were more generous than those to which defendant was entitled.

Defendant had a fair trial. All issues were fully submitted to the jury in a comprehensive charge. The convictions were justified under the evidence and we are of the opinion that the verdict of the jury must be carried into effect.

Now, therefore, to wit: November 3, 1965, motions in arrest of judgment and for new trial are denied, and rules therefor discharged. Defendant is directed to appear in court for sentencing, as directed by the district attorney.