503 A.2d 27

**COMMONWEALTH of Pennsylvania**

v.

**Guy DREXEL, Appellant.**

Superior Court of Pennsylvania.

Submitted Aug. 5, 1985.

Filed Jan. 3, 1986.

Reargument Denied Jan. 23, 1986.

336

Guy Drexel, in propria persona.

Charles M. Guthrie, Jr., Assistant District Attorney, Reading, for Com., appellee.

Before SPAETH, President Judge, and MONTEMURO and MONTGOMERY, JJ.

SPAETH, President Judge:

This is an appeal from an order denying, without an evidentiary hearing, appellant's petition for relief under the Post-Conviction Hearing Act, 42 Pa.C.S. § 9541 *et seq.* Appellant was convicted of first degree murder, solicitation, conspiracy, retaliation against a witness, and tampering with a witness, and was sentenced to life imprisonment. In his PCHA petition, appellant argues that trial counsel was ineffective,[1] first, in failing to object to the trial judge's charge to the jury on the Commonwealth's burden of proof to establish the corpus delicti; and second, in failing to object to the court's informing the jury of the penalties for homicide. We affirm.

On April 23, 1977, at 10:00 a.m., Thomas Morgan, age 19, told his mother that he was going out and would be back by midnight. This was the last time anyone saw Morgan alive. On October 9, 1977, the badly decomposed torso of a man was found in a wooded area of Berks County, some sixteen

---

1. Appellant properly layers his ineffectiveness argument by also citing appellate counsel's ineffectiveness in failing to raise the issues on appeal.

miles from Morgan's home. The head was missing, although a portion of a jawbone lay nearby. Only fragments of skin and fat were intact, and all of the major organs were missing except for a small piece of the liver. A wallet found near the body contained various identification papers bearing Morgan's name. This, along with eyeglasses found underneath the body, shreds of clothing, strands of hair, and two teeth, led police to conclude that the body was that of Thomas Morgan.

Appellant (Morgan's brother-in-law) and three others (who were tried separately) were charged with murdering Morgan. It was the Commonwealth's contention that appellant engineered the homicide to prevent Morgan from testifying against the four of them at an upcoming preliminary hearing on burglary charges; Morgan, a participant in the burglary, had informed on the four to the police and had agreed to testify against them at the hearing.

One of the issues to be resolved at trial was the nature of Morgan's death. Two pathologists testified for the Commonwealth, but because of the condition of the body, neither was able to state positively the cause of death. The Commonwealth did present circumstantial evidence to prove that Morgan died from unnatural causes, including the fact of the decapitation itself, the fact that Morgan did not drive and yet was found sixteen miles from his home, that he had been in good health, and that on the night of his disappearance he had expressed his intention to be gone only a short time. As to appellant's involvement in the murder, the Commonwealth's principal witness was Gene Roth, who testified that on the day after Morgan's disappearance, appellant had fully admitted to having planned and solicited the homicide. N.T. 6/26/78 at 184 *et seq.*

In his defense, appellant took the stand and testified that although he had known for some time that Morgan had been murdered, he was not involved in the murder. Rather, he stated, it was Joseph Biancone, a local "gangster," who had set up the murder, N.T. 6/26/78 at 234, and that Biancone had admitted this to him within a few days of Morgan's disappearance. *Id.*

In his PCHA petition, appellant's first argument is that counsel was ineffective in failing to object to the following portion of the charge to the jury (regarding Gene Roth's testimony of appellant's out-of-court admission).

As I told you, you may not consider the statement as evidence against the defendant unless you find that a crime was in fact committed. The Commonwealth has the burden of proving this matter by evidence independent of the statement itself. The purpose of this rule is to guard against a conviction of a person for a crime which never really happened even though the person confessed to it. More precisely, you must disregard the statement alleged to have been made by Guy Drexel unless you are satisfied by the other evidence that Thomas Morgan is dead and that his death was probably caused feloniously by someone killing him. A killing is felonious if it is either murder or involuntary manslaughter. As I told you, you can't consider the statement as evidence against the defendant unless you find the defendant in fact made the statement.

N.T. 6/29/78 at 186.

Appellant contends that in telling the jury that it need only find that Morgan's death was "probably caused feloniously," the court committed reversible error, the proper standard being that the jury had to find beyond a reasonable doubt that the death was caused feloniously. While we agree with appellant that the court committed error, we have concluded that the error was not reversible.

A crime may be said to consist of three elements: first, "the occurrence of the specific kind of injury or loss;" second, "somebody's criminality ... as the source of the loss;" and third, "the accused's identity ... as the doer of this crime." *Commonwealth v. Tessel*, 347 Pa.Superior Ct. 37, 500 A.2d 144 (1985), quoting 7 J. Wigmore, *Evidence* § 2072, at 524–25 (Chadbourn rev. 1978) (emphasis omitted). Corpus delicti, meaning "body of the crime," comprises the first two elements. *Commonwealth v. Ware*, 459 Pa. 334, 365, 329 A.2d 258, 274 (1974). Thus, in a murder prosecution, the corpus delicti consists of "proof that a human

being is dead and that such death took place under circumstances which indicate criminal means or the commission of a felonious act." *Commonwealth v. Milliken,* 450 Pa. 310, 317, 300 A.2d 78, 82 (1973), quoting *Commonwealth v. Frazier,* 411 Pa. 195, 202, 191 A.2d 369, 373 (1963).

Based on the foregoing principles, Pennsylvania has developed a corpus delicti rule of evidence that states that before the Commonwealth may introduce a defendant's confession or admission, it must offer independent evidence that a crime in fact occurred.[2] *Commonwealth v. Moore,* 466 Pa. 510, 513, 353 A.2d 808, 809 (1976); *Commonwealth v. Smallwood,* 497 Pa. 476, 483, 442 A.2d 222, 225 (1982); *Commonwealth v. Byrd,* 490 Pa. 544, 556, 417 A.2d 173, 179 (1980); *Commonwealth v. Palmer,* 448 Pa. 282, 285–86, 292 A.2d 921, 922 (1972). Such independent evidence need not conclusively prove that a crime was committed; rather, the rule is satisfied if the evidence "points to an unlawful killing, although it may indicate as well accident or suicide." *Commonwealth v. Coontz,* 288 Pa. 74, 79, 135 A. 538, 539 (1927). *See also Commonwealth v. Byrd, supra,* 490 Pa. at 556, 417 A.2d at 179 (to introduce incriminating out-of-court statement, Commonwealth need not prove existence of crime beyond a reasonable doubt); *Commonwealth v. Turza,* 340 Pa. 128, 135, 16 A.2d 401, 405 (1940) (evidence sufficient "where the circumstances attending the death are consistent with crime, though they may also be consistent with accident ... or suicide"). The purpose of the rule is to prevent the use of hasty and unguarded confessions to convict an individual when no crime was committed. *Commonwealth v. Ware, supra,* 459 Pa. at 365, 329 A.2d at 274. In essence, then, to introduce a defendant's confession or

---

**2.** In *Commonwealth v. Ware,* 459 Pa. 334, 329 A.2d 258 (1974), the Supreme Court noted that although the rule is frequently characterized as setting a condition on the admissibility of the defendant's statements, that this is not really correct because the trial court has discretion over the order of proof. Rather, the Court stated, the rule is "a formulation of the required proof to take the case to the trier of fact or to sustain a finding of guilty." *Id.,* 459 Pa. at 366, n. 41, 329 A.2d at 274 n. 41, quoting McCormick's Handbook of the Law of Evidence, § 158, at 347 (2d ed. E. Cleary 1972) (footnote omitted).

admission, the Commonwealth need only show that it was more probable than not that the victim died from unnatural causes.

This threshhold burden, however, is irrelevant to the Commonwealth's ultimate burden of proof. It is of course settled that the Commonwealth must prove every element of the crime charged beyond a reasonable doubt, *Commonwealth v. Ewell*, 456 Pa. 589, 319 A.2d 153 (1974); and implicit in that burden is the requirement that the Commonwealth must prove beyond a reasonable doubt that a crime was in fact committed—in a homicide case, that death was caused by felonious means. *Commonwealth v. Moore*, 466 Pa. 510, 513, 353 A.2d 808, 810 (1976); *Commonwealth v. Lettrich*, 346 Pa. 497, 502, 31 A.2d 155, 156 (1943); *Gray v. Commonwealth*, 101 Pa. 380, 386 (1882). The distinction between the quantum of proof required to establish the corpus delicti and that required to prove that a crime was in fact committed has been explicitly stated by our Supreme Court in *Commonwealth v. Ware, supra:*

> We do not lose sight of the distinction between the requirement of corroboration of the statements of the accused and the Commonwealth's ultimate burden of proof. The former merely requires that the trial court be satisfied that a conviction will not result from a confession or admission when no crime has in fact been committed by anyone. Ultimately, the Commonwealth must prove beyond a reasonable doubt that a crime has in fact been committed. *Commonwealth v. May*, 451 Pa. 31, 33 n. 2, 301 A.2d 368, 370 n. 2 (1973); *Commonwealth v. Maybee*, 429 Pa. 222, 223, 239 A.2d 332, 333 (1968). 459 Pa. at 367 n. 43, 329 A.2d at 275 n. 43.

It is clear, therefore, that the trial court erred when it instructed the jury that it had to "disregard [appellant's admission] unless [it was] satisfied by the other evidence that Thomas Morgan is dead and that his death was probably caused feloniously by someone killing him." By this instruction the court permitted the jury—in theory, at least; whether in fact will be discussed next—to decide that a crime was committed only as a matter of *probability*, and

then to proceed from that decision to the further decision that *if* a crime was committed, appellant was beyond a reasonable doubt the one who had committed it. This reasoning represents an impermissible dilution, or lessening, of the Commonwealth's ultimate burden, and to avoid that, the court should have instructed the jury that before it could consider appellant's admission, it had to be satisfied not probably but beyond a reasonable doubt that Morgan's death was caused feloniously.[3]

■ We have concluded, however, that on the facts of this case, the trial court's error was harmless. The basis of our conclusion is that appellant himself did not contest the cause of death. Thus he testified that he knew that Thomas Morgan had been murdered because Joseph Biancone had told him so. Appellant's defense was that he was not the one who committed the murder, it was Biancone. This case is therefore unlike *Commonwealth v. Frazier, supra,* where the trial court had also given the same erroneous instruction as here and the Supreme Court held that the error was reversible. In that case, "[w]hether the death was due to suicide or caused by the felonious act was one of the *main issues* to be determined. It was, therefore, logical and incumbent upon the jury to resolve this question in the first instance." 411 Pa. at 203, 191 A.2d at 373 (emphasis added). *See also Commonwealth v. Fried,* 327 Pa.Super. 234, 475 A.2d 773 (1984) (McEWEN, J., with two judges concurring in the result) (because the cause of death was highly contested at trial, court's erroneous instruction

---

3. The PCHA court, in discussing appellant's petition, stated that the issue of whether the charge was error had been litigated, but that is inaccurate. Appellant's post-trial motions raised the issue of whether there had been sufficient proof of the corpus delicti to warrant admission of Roth's testimony of appellant's admissions. On that issue the trial court held that there had been sufficient proof, slip op. of tr. ct at 2–4, and on appeal, the Supreme Court affirmed. *Commonwealth v. Drexel,* 494 Pa. 138, 430 A.2d 1155 (1981) (per curiam). As just discussed, however, the issue of whether the trial court correctly ruled that the Commonwealth met its burden of proving the corpus delicti is distinct from the issue of whether the trial court correctly charged the jury on the Commonwealth's ultimate burden of proving that a crime was in fact committed.

on corpus delicti was reversible error). Here, appellant's defense went, not to the issue of the cause of death, but to the issue of who caused the death. The defense thus having essentially conceded that Morgan died of unnatural causes, the trial court's erroneous instruction was harmless.

This conclusion is further supported by the well-settled proposition that in reviewing jury instructions for reversible error, we must read the charge as a whole. *Commonwealth v. Lesher*, 473 Pa. 141, 373 A.2d 1088 (1977). "Error cannot be predicated on isolated excerpts of the charge. It is the general effect of the charge that controls." *Commonwealth v. Woodward*, 483 Pa. 1, 4, 394 A.2d 508, 510 (1978). Here, the error cited by appellant was a single sentence in a charge that comprises over twenty-two pages of transcript. In the course of the charge the trial court addressed the Commonwealth's burden of proof extensively, as the following excerpts show:

I have gone over with you several times the principle of our system of criminal law that the defendant is presumed innocent. I advised you that the defendant did not have to produce evidence. The defendant did here. The defendant here testified. Nonetheless, it is the Commonwealth that always has the burden of proving each and every element of the crime charged, and that the defendant is guilty of that crime beyond a reasonable doubt. If the Commonwealth evidence fails to meet its burden, then our verdict must be not guilty. On the other hand, if the Commonwealth evidence does prove beyond a reasonable doubt that the defendant is guilty, then your verdict should be guilty.

Although the Commonwealth has the burden of proving the defendant guilty, that does not mean that the Commonwealth must prove its case beyond all doubt, or to a mathematical certainty. Nor does it mean that the Commonwealth must demonstrate the complete impossibility of innocence. A reasonable doubt is said to be by our highest Appellate Court a doubt that would cause a reasonably careful and sensible person to hesitate before acting upon a matter of importance in his or her own life.

A reasonable doubt must fairly arise out of the evidence presented or lack of evidence presented with respect to some element of the crime. It must be a real doubt, not an imagined one and not a doubt manufactured to avoid carrying out an unpleasant duty.

To summarize, the Commonwealth has the burden of proving the defendant guilty. If it meets that burden, then the defendant is no longer presumed innocent and you should find him guilty.

N.T. 6/29/78 at 273-72.

We do not suggest that in a case in which the cause of death was a principal issue, these instructions would overcome an erroneous instruction on corpus delicti; to the contrary, they would not. *See Commonwealth v. Frazier, supra; Commonwealth v. Fried, supra.* In this case, however, when corpus delicti was essentially conceded by the defense, we believe that the instructions were so full that there is no danger that the jury was not satisfied of appellant's guilt beyond a reasonable doubt.

■ The second issue raised by appellant, that counsel was ineffective in failing to object to the trial court's informing the jury of the penalties for the various degrees of homicide, is without merit.[4] The governing statute at the time of appellant's trial in 1978 was 18 Pa.C.S. § 1311. That statute, entitled "Sentencing for murder," provides in pertinent part:

**(b) Instructions to jury and recording verdict.**—In a trial for murder, the court shall inform the jury prior to their deliberations, as to the penalties for murder of the first degree, murder of the second degree and murder of the third degree. The court shall also inform the jury that if they find the defendant guilty of murder of the first degree, it will be their further duty to determine whether the killing was accompanied by any aggravating

---

4. Appellant's brief, which was filed *pro se,* does not raise this issue in its Statement of Questions Presented, although the issue is discussed in the text of the argument. Despite this discrepancy, and in the interest of judicial efficiency, we will address the question, for it was presented properly to the PCHA court.

or mitigating circumstances as set forth in subsection (d) of this section after hearing such additional evidence as may be submitted upon that question. Whenever the jury shall agree upon a verdict of murder of the first degree they shall immediately return and render the same, which shall be recorded, and shall not thereafter be subject to reconsideration by the jury, or any member thereof.

*Id.*

The mandatory language of section 1311(b) (the trial court "shall" inform the jury of the penalties for murder) has been interpreted by this court to apply only to homicide cases in which the death penalty is a possible sentence. *See Commonwealth v. Lybrand,* 272 Pa.Super. 475, 416 A.2d 555 (1979). At appellant's trial, it was agreed prior to trial that the Commonwealth would not seek the death penalty. N.T. 6/26/78 at 20. The trial court, therefore, was not required to inform the jury of the penalties for murder. This does not mean, however, as appellant would have us conclude, that the court was prohibited from so informing the jury; nor do we infer any such prohibition from the language of section 1311. We therefore conclude that the PCHA court properly denied appellant relief on this issue.

Affirmed.