555 A.2d 119

**COMMONWEALTH of Pennsylvania**

v.

**Catherine Spear FRIED, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 9, 1988.

Filed Jan. 17, 1989.

Reargument Denied March 14, 1989.

Petition for Allowance of Appeal Denied
Aug. 14, 1989.

Norris E. Gelman, Philadelphia, for appellant.

Marianne E. Cox, Assistant District Attorney, Philadelphia, for Com., appellee.

Before WIEAND, McEWEN and MELINSON, JJ.

WIEAND, Judge:

Dr. Paul Fried, who had a history of drug and alcohol abuse, died on July 23, 1976, in his home in Philadelphia. The Assistant Medical Examiner for the City of Philadelphia executed a death certificate reciting that Dr. Fried had died as a result of suicide by ingestion of unknown substances. An autopsy performed at the request of the family by Dr. Milton Helpern, M.D., a former Medical Examiner for the City of New York, produced a report that Dr. Fried's death had not been a suicide but the result of natural causes. After Dr. Helpern died, additional opinions were obtained,[1] and on the basis of these opinions, Catherine Spear Fried, the widow of Dr. Fried, was arrested and charged with murder. A trial by jury resulted in a finding that she was guilty of murder of the first degree. The trial court, however, awarded a new trial, and a panel of the Superior Court affirmed. *Commonwealth v. Fried*, 327 Pa.Super. 234, 475 A.2d 773 (1984).

At the second trial, the cause of death was once again disputed vigorously. The Commonwealth contended that Dr. Fried's death had been caused by suffocation at the hands of his wife, while the defendant-wife contended that Dr. Fried had died of natural causes. The Commonwealth also produced testimony by Gerald Sklar and Michael Selkow, both of whom were convicted felons, that the defendant had attempted to hire them to kill Dr. Fried; and Sklar testified that the defendant had subsequently admitted to him that she had done it herself by holding a pillow over her

---

1. By this time, Dr. Fried's body had been cremated.

husband's face. A jury again found Mrs. Fried guilty of murder of the first degree. This time, however, the trial court denied post-trial motions and sentenced her to life imprisonment. This appeal followed.

Appellant's principal argument is that the trial court erroneously instructed the jury that it could consider the alleged admission made by appellant if convinced beyond a reasonable doubt that Dr. Fried *probably* had been killed by felonious means and if "the circumstances [were] more consistent with death having been caused by a felonious killing by suffocation than in some other way." We agree that these instructions were erroneous; and, therefore, we reverse and remand for a new trial.

The decided cases distinguish between the Commonwealth's initial burden of showing that a death was more consistent with a criminal act than other causes in order to render admissible a confession and the Commonwealth's ultimate burden of proving beyond a reasonable doubt that the death was caused by a criminal act before the jury may consider a confession for the purpose of identifying the killer. This distinction was explained in *Commonwealth v. Drexel,* 349 Pa.Super. 335, 503 A.2d 27 (1986), *appeal denied,* 514 Pa. 616, 521 A.2d 931 (1987), as follows:

> Pennsylvania has developed a corpus delicti rule of evidence that states that before the Commonwealth may introduce a defendant's confession or admission, it must offer independent evidence that a crime in fact occurred. *Commonwealth v. Moore,* 466 Pa. 510, 513, 353 A.2d 808, 809 (1976); *Commonwealth v. Smallwood,* 497 Pa. 476, 483, 442 A.2d 222, 225 (1982); *Commonwealth v. Byrd,* 490 Pa. 544, 556, 417 A.2d 173, 179 (1980); *Commonwealth v. Palmer,* 448 Pa. 282, 285–86, 292 A.2d 921, 922 (1972). Such independent evidence need not conclusively prove that a crime was committed; rather, the rule is satisfied if the evidence "points to an unlawful killing, although it may indicate as well accident or suicide." *Commonwealth v. Coontz,* 288 Pa. 74, 79, 135 A. 538, 539 (1927). *See also Commonwealth v. Byrd, supra,* 490 Pa.

at 556, 417 A.2d at 179 (to introduce incriminating out-of-court statement, Commonwealth need not prove existence of crime beyond a reasonable doubt); *Commonwealth v. Turza*, 340 Pa. 128, 135, 16 A.2d 401, 405 (1940) (evidence sufficient "where the circumstances attending the death are consistent with crime, though they may also be consistent with accident . . . or suicide"). The purpose of the rule is to prevent the use of hasty and unguarded confessions to convict an individual when no crime was committed. *Commonwealth v. Ware*, [459 Pa. 334, 365, 329 A.2d 258, 274 (1974) ]. In essence, then, to introduce a defendant's confession or admission, the Commonwealth need only show that it was more probable than not that the victim died from unnatural causes.

This threshhold [sic] burden, however, is irrelevant to the Commonwealth's ultimate burden of proof. It is of course settled that the Commonwealth must prove every element of the crime charged beyond a reasonable doubt, *Commonwealth v. Ewell*, 456 Pa. 589, 319 A.2d 153 (1974); and implicit in that burden is the requirement that the Commonwealth must prove beyond a reasonable doubt that a crime was in fact committed—in a homicide case, that death was caused by felonious means. *Commonwealth v. Moore*, 466 Pa. 510, 513, 353 A.2d 808, 810 (1976); *Commonwealth v. Lettrich*, 346 Pa. 497, 502, 31 A.2d 155, 156 (1943); *Gray v. Commonwealth*, 101 Pa. 380, 386 (1882). The distinction between the quantum of proof required to establish the corpus delicti and that required to prove that a crime was in fact committed has been explicitly stated by our Supreme Court in *Commonwealth v. Ware, supra:*

> We do not lose sight of the distinction between the requirement of corroboration of the statements of the accused and the Commonwealth's ultimate burden of proof. The former merely requires that the trial court be satisfied that a conviction will not result from a confession or admission when no crime has in fact been

committed by anyone. Ultimately, the Commonwealth must prove beyond a reasonable doubt that a crime has in fact been committed. *Commonwealth v. May*, 451 Pa. 31, 33 n. 2, 301 A.2d 368, 370 n. 2 (1973); *Commonwealth v. Maybee*, 429 Pa. 222, 223, 239 A.2d 332, 333 (1968).

459 Pa. at 367 n. 43, 329 A.2d at 275 n. 43.

It is clear, therefore, that the trial court erred when it instructed the jury that it had to "disregard [appellant's admission] unless [it was] satisfied by the other evidence that Thomas Morgan is dead and that his death was probably caused feloniously by someone killing him." By this instruction the court permitted the jury—in theory, at least; whether in fact will be discussed next—to decide that a crime was committed only as a matter of probability, and then to proceed from that decision to the further decision that if a crime was committed, appellant was beyond a reasonable doubt the one who had committed it. This reasoning represents an impermissible dilution, or lessening, of the Commonwealth's ultimate burden, and to avoid that, the court should have instructed the jury that before it could consider appellant's admission, it had to be satisfied not probably but beyond a reasonable doubt that Morgan's death was caused feloniously.

*Id.* 349 Pa.Super. at 340–342, 503 A.2d at 30–31. (footnotes omitted). See also: *Commonwealth v. Fried, supra.*

"[W]here ... the evidence is in doubt as to the manner or cause of death, the question of the existence of the corpus delicti should first be determined [by the jury] without consideration of the defendant's admission of guilt." *Commonwealth v. Frazier,* 411 Pa. 195, 203, 191 A.2d 369, 373 (1963). "Before a conviction can be had, it must always appear, beyond a reasonable doubt, that death was caused as a result of some felonious act, and, if this is shown, then the agency of the defendant in committing the crime may be made evident by his voluntary declarations." *Commonwealth v. Puglise,* 276 Pa. 235, 238, 120 A. 401,

402 (1923).  See also: *Gray v. Commonwealth*, 101 Pa. 380, 386 (1882).  In practice, therefore, the corpus delicti rule "requires that the jury may not consider such confession as evidence of defendant's guilt of the crime charged, unless the Commonwealth shall have produced evidence sufficient to convince the jury beyond a reasonable doubt that the crime charged was committed by someone." *Commonwealth v. Lettrich*, 346 Pa. 497, 502, 31 A.2d 155, 157 (1943). See also: *Commonwealth v. Tallon*, 478 Pa. 468, 475–476, 387 A.2d 77, 81 (1978) (Opinion in Support of Affirmance) ("It is the rule in this Commonwealth that before a jury can consider a defendant's confession, it must be convinced beyond a reasonable doubt that the corpus delicti has been established.").

In the instant case, the trial court instructed the jury as follows regarding the defendant's statement:

As I told you, you may not consider this statement as evidence against the defendant unless you first find beyond a reasonable doubt that a crime was committed.

In making this preliminary determination, you may consider any direct or circumstantial evidence, apart from the aforesaid statement tending to prove or disprove a crime. *More precisely, you must disregard the statement unless you are satisfied beyond a reasonable doubt by other evidence in the case than [sic] Dr. Paul Fried is dead, and that his death was probably caused by someone feloniously killing him.* A killing is felonious if it is either murder or voluntary manslaughter by some person's criminal act in suffocating him.

The other evidence in this case, aside from the defendant's aforesaid statement, need not tend to show that the crime was committed by the defendant, only that the crime was committed by someone.

*The other evidence need not rule out all possibility of accident, suicide or natural causes.  It is enough if you are satisfied beyond a reasonable doubt that the cir-*

*cumstances are more consistent with death having been caused by a felonious killing by suffocation than in some other way.*

The object of these rules is to guard against convicting a person of a crime that never really happened even though the person confessed to it. (emphasis added).

During the course of these instructions, it will be observed, the trial court twice stated the rule incorrectly. It confused the Commonwealth's initial burden of establishing the admissibility of the defendant's statement with the Commonwealth's ultimate burden of proving beyond a reasonable doubt that a crime had been committed.

After its deliberations had commenced, the jury returned to the courtroom to ask the following questions:

Are we correct that the testimony of Jerry Sklar that Mrs. Fried said to him that she killed Dr. Fried cannot be considered until we determine that there was a crime?

Can we consider the testimony of Jerry Sklar that Mrs. Fried told him that she killed Dr. Fried to help us determine whether or not a crime had been committed?

Instead of giving the jury definitive answers to its questions, the trial court repeated the same erroneous instructions which it had previously given. Although the defendant had requested the trial court to give simple "yes" and "no" answers to the jury's inquiries, "[t]he scope of supplemental instructions given in response to a jury's request rests within the sound discretion of the trial judge." *Commonwealth v. Haddle,* 271 Pa.Super. 418, 422, 413 A.2d 735, 738 (1979). See also: *Commonwealth v. Perkins,* 473 Pa. 116, 373 A.2d 1076 (1977); *Commonwealth v. Boone,* 467 Pa. 168, 354 A.2d 898 (1975). However, where, as here, the initial instruction was erroneous, or misleading, or both, to merely repeat the same instruction was a clear abuse of discretion. Because the jury in this case was incorrectly instructed on the corpus delicti rule and because the erroneous instruction appears to have caused confusion in the

minds of the jurors which may have contributed to their verdict, the judgment of sentence must be reversed and the case remanded for a new trial.

We find no merit in the remaining assignments of error argued by appellant on appeal. We discuss them briefly in order to render a complete review. First, appellant contends that it was error to allow Dr. Michael Baden to testify, in response to a hypothetical question, that in his opinion Dr. Fried had died of homicidal suffocation. This testimony was improper, appellant contends, because Dr. Baden took Mrs. Fried's alleged confession into consideration in formulating his opinion. Our review of the record, however, discloses that the witness's opinion regarding the cause of death was based on medical considerations and not on admissions allegedly made by the defendant. This was sufficient to establish the corpus delicti. See: *Commonwealth v. Byrd*, 490 Pa. 544, 556, 417 A.2d 173, 179 (1980) (corpus delicti requirement is met once independent corroborative evidence is introduced which is more consistent with crime than with other cause). The corpus delicti having been established, it was not improper to allow the Commonwealth to inquire hypothetically if death by suffocation was consistent with a person sitting on a pillow used to cover the face of the deceased.

Appellant also contends that she was unfairly restricted in her cross-examination of Dr. Baden. More specifically, she contends that the trial court erred when it refused to permit her to impeach Dr. Baden by reading the conclusions which had been included in Dr. Helpern's autopsy report. Dr. Baden conceded that he had relied on findings made during the autopsy by Dr. Helpern, but his conclusions varied from those of Dr. Helpern. The trial court permitted the witness to be cross-examined regarding the findings made by Dr. Helpern, but refused to allow Dr. Helpern's opinions to be read to the jury because Helpern was not available for cross-examination. We find no error

in this ruling. See: *Ganster v. Western Pennsylvania Water Co.,* 349 Pa.Super. 561, 504 A.2d 186 (1985).

■ Finally, appellant complains because she was not permitted to ask Gerald Sklar on cross-examination if he hadn't lied during two unrelated murder trials and if Michael Selkow was in fact an accomplice in the commission of murders for which Sklar had been convicted.[2] By this line of questioning she intended to "show[ ] the jury the nature, relationship, and previous planned perjury by the two persons who provided the only evidence against [her] in this case." However, "[t]he scope and limits of cross-examination are largely within the discretion of the trial court and its actions pertaining thereto will not be reversed in the absence of a clear abuse of its discretion or error of law." *Commonwealth v. Buehl,* 510 Pa. 363, 388, 508 A.2d 1167, 1179 (1986). See also: *Commonwealth v. Schmidt,* 437 Pa. 563, 263 A.2d 382 (1970). To refuse to allow a defendant to cross-examine a Commonwealth witness regarding false statements allegedly made in an unrelated case is not an abuse of discretion. See: *Commonwealth v. Buehl, supra* 510 Pa. at 388, 508 A.2d at 1180; *Commonwealth v. Smith,* 240 Pa.Super. 212, 216–217, 361 A.2d 862, 865 (1976), *rev'd on other grounds,* 477 Pa. 424, 383 A.2d 1280 (1978). See also: Packel and Poulin, Pennsylvania Evidence, Ch. VI, § 608.2 (1987). Neither Sklar nor Selkow had been convicted of perjury, and their testimony in unrelated litigation was a collateral matter having little, if any, relevancy to the case being tried. The trial court did not abuse its discretion when it refused to allow cross-examination regarding these collateral matters.

For the reasons previously set forth, however, a new trial is required.

Reversed and remanded for a new trial. Jurisdiction is not retained.

**2.** At the time of appellant's trial, Sklar was serving two concurrent life sentences for murder. The jury at appellant's trial was made aware of this fact.