## In re Petition to Remove Constable Lafferty

*Lawrence M. Cherba, deputy district attorney,* for the Commonwealth.

*John J. Kerrigan Jr.,* for respondent.

GARB, *P.J.,* June 25, 1991—After hearing on May 30, 1991, we entered an order removing Robert C. Lafferty as constable for the First Ward of Newtown Borough, Bucks County, Pennsylvania. Lafferty has appealed from that order.

This matter came before the court as the result of a petition filed by the District Attorney of Bucks County seeking Lafferty's removal. As a result of that petition, the aforesaid hearing was held.

At the hearing, it was established that on November 5, 1985, Lafferty was elected constable for the First Ward of Newtown Borough, Bucks County, Pennsylvania, for a term of six years. Lafferty previously had been elected constable and had served for approximately 20 years. On August 9, 1990, Lafferty was transporting a female prisoner to the Bucks County Correctional Facility pursuant to an order of a Bucks County district justice. Lafferty was alone with the prisoner. In the course of that transportation, Lafferty stopped at a convenience

store, purchased two packs of cigarettes and a package of some form of snack for the prisoner and gave her $10 in cash. In the adjacent parking lot to the convenience store not far from the correctional facility, the prisoner performed a sex act upon Lafferty. This was done with Lafferty's agreement and consent.

The prisoner complained of the sex act when she was ultimately deposited at the Bucks County Correctional Facility. The Bucks County District Attorney, through the county detectives, instituted an investigation into the matter. In the course of that investigation, Lafferty appeared at the district attorney's office, represented by counsel, and agreed to submit to a polygraph test. The polygraph test was performed. At the conclusion of the polygraph test, Lafferty and counsel were informed that there were some ambiguities in the results as the result of which, Lafferty submitted to a second polygraph test. Following the second polygraph test, Lafferty admitted to the county detectives that he had, in fact, engaged in a sex act with the prisoner.

The petition for removal was brought pursuant to the Act of May 7, 1929, P.L. 1581, §1, 13 P.S. §31. In relevant part, that Act of Assembly provides as follows:

"The Courts of Quarter Sessions (now the Court of Common Pleas—Criminal Division) of each county shall also have full power, on petition of any citizen or citizens of said county setting forth the complaint and verified by affidavit, to inquire as to the official conduct of any constable of said county in cases other than charges against such constable of the existence in him of habits of intemperance or neglect of duty; and, in all cases where said court shall be satisfied that because of any act or acts of malfeasance or misfeasance in office committed by

him, including any act or acts of oppression of any suitor or suitors, or witness or witnesses, such constable is unfit or incompetent properly to discharge his official duties, it shall be lawful for said courts, respectively, to decree the removal of said constable from office. . ."

The most recent application of that statute is to be found in an opinion and order of this court in *Removal of Ferguson as Constable,* 73 D.&C. 2d 169 (1975), wherein we stated as follows:

"Malfeasance in office has been defined as involving an abuse of public justice by a public officer: *Commonwealth v. Miller,* 94 Pa. Super. 499 (1928). Misfeasance in office means either the breach of a positive statutory duty or the performance by a public official of a discretionary act with an improper or corrupt motive: *Commonwealth v. Peoples et. al.,* 345 Pa. 576, 28 A.2d 792 (1942). Malfeasance in office has likewise been defined as a breach of a positive statutory duty in the performance of a discretionary act with an improper or corrupt motive: *McNair's Petition,* 324 Pa. 48, 187 A. 498 (1936). These definitions of malfeasance and misfeasance have been applied to the question of the application of the act before us for purposes of determining whether a constable must be removed from office. See *Commonwealth ex. rel. Specter v. Rothman,* 40 D.&C. 2d 637 (1966), and *Application for Removal from Office of James T. Taylor, Constable,* 5 Chester [L. Rep.] 81 (1952)."

In defining the terms malfeasance, misfeasance and nonfeasance in office for purposes of prosecution of a police officer for violation of those common law offenses, the court in *Commonwealth v. Haines,* 147 Pa. Super. 165, 24 A.2d 85 (1942), stated as follows:

"The defendant, as a detective, was required to investigate any and all complaints of violation of the criminal law occurring in Upper Darby Township. The Commonwealth showed that he, instead of being loyal and honest in discharging the duties of his office by detecting crime and aiding in the punishment of the offenders, was violating his official obligations and attempting to conceal crime and protect violators of the law. His actions showed a willful dereliction and breach of his duties."

In *Commonwealth v. Stumpo,* 306 Pa. Super. 447, 452 A.2d 809 (1982), in sustaining the conviction of a police officer for a charge of official oppression, the court stated as follows:

"A police officer wearing his badge of office, his uniform, pistol and night stick carries with him at all times two unstated veiled threats, two capabilities: one is the use of force, the other is the power to arrest. These capabilities are known to people with whom the police officer deals and, together with a proper respect for his office, they engender an attitude of circumspection and deference. The attitude is greatly to the advantage of the police themselves. It affords them an important measure of protection and enables them to perform their official duties. Of course, it is also in the interests of the state to encourage this attitude. Thus, it becomes all the more important that improper actions taking advantage of this authority be within the scope of the crime of official oppression. The legislature has clearly provided for this coverage with the broad language of the statute.

"The powers of a police officer to use force and arrest are formidable. The implicit recognition of these powers by the public in dealing with a police officer is both usual and desirable. Therefore, while exceptions are conceivable, we hold as a matter of

general rule that a police officer in uniform is cloaked with the authority of his office; and that actions taken by him which constitute mistreatment of another may fairly be said, within the terms of the statute, to be 'taking advantage' of that authority."

In that case, the foregoing quote was engendered by the actions of a uniformed Philadelphia Police officer taking sexual advantage of a waitress in a cocktail lounge while he was on duty, armed and wearing his badge.

We are satisfied that the conduct to which Lafferty confessed was of such nature as to rise to the level of malfeasance and misfeasance in office as constituting acts of oppression of a suitor as to render him unfit and incompetent to discharge his official duties. He was in uniform, adorned with a badge and armed with a gun. He was under orders by a judicial officer to transport a prisoner to the correctional facility. The prisoner was shackled and placed in the rear of his caged automobile. He had a police radio in that automobile. Although not a police officer, strictly speaking, he certainly was a quasi-law enforcement officer, and at that time, engaged in activities directly for the court. He was placed in a position of control over his prisoner. He was adorned with all of the trappings of authority and invested with the power of that authority. He failed to discharge that authority consistently with his official duty. He made a stop at the convenience store that was uncalled for, he furnished her with cigarettes, a snack and money that was beyond the call of his duties, and engaged in sexual conduct with her which requires no further embellishment. That conduct constitutes oppression of his charge, brings disgrace upon Lafferty and disrepute upon the court and renders him unfit and incompetent properly to discharge his official duties.

In his statement of matters appealed from, appellant raises two evidentiary issues. In the first, he asserts that it was error to receive evidence of the admissions he made to the county detective without having first established the corpus delicti of the charges against him. We believe that appellant's reliance on the corpus delicti rule is misplaced.

In Pennsylvania, the corpus delicti rule of evidence precludes admission by the Commonwealth of a defendant's confession or admission unless it offers independent evidence a crime, in fact, occurred. *Commonwealth v. Karns,* 389 Pa. Super. 58, 566 A.2d 615 (1989). The mere statement of the rule of evidence itself amply demonstrates the reason why appellant's reliance is misplaced. This is a rule of evidence applicable in criminal cases only. The rule was more broadly explicated in *Commonwealth v. Ware,* 459 Pa. 334, 329 A.2d 258 (1974), in which the court stated as follows:

"Appellant invokes the rule that a criminal conviction may not be based on the extra-judicial confession or admission of the defendant unless it is corroborated by independent evidence establishing the corpus delicti. This rule is rooted in a hesitance to convict one of crime on the basis of his own statements only. 'The grounds on which the rule rests are the hasty and unguarded character which is often attached to confessions and admissions and the consequent danger of a conviction where no crime has in fact been committed. . .' *Commonwealth v. Turza,* 340 Pa. 128, 16 A.2d 401 (1940). Therefore, the rule requires that the prosecution introduce evidence independent of the defendant's statement which establishes that a crime has in fact occurred." (citations omitted)

In *Commonwealth v. Fried,* 382 Pa. Super. 156, 555 A.2d 119 (1989), the court quotes from *Com-*

*monwealth v. Drexel,* 349 Pa. Super. 335, 503 A.2d 27 (1986), as follows:

"Pennsylvania has developed a corpus delicti rule of evidence that states that before the Commonwealth may introduce a defendant's confession or admission, it must offer independent evidence that a crime, in fact, occurred . . . The purpose of the rule is to prevent the use of hasty and unguarded confessions to convict an individual when no crime was committed. . ."

Obviously, therefore, the corpus delicti rule was developed in Pennsylvania as a rule of evidence in criminal cases to guard against the possibility of convicting an accused of a crime based solely upon his own admissions where there is no independent evidence that a crime has been committed. Although the Commonwealth is not required to prove the corpus delicti beyond a reasonable doubt before a confession or admission is admissible, the Commonwealth must at least prove to the satisfaction of the jury that it is more probable than not that the crime was committed before a jury or fact finder may consider the confession or admission. *Commonwealth v. Fried, supra.* No such considerations apply in a civil proceeding such as the one before us. Appellant is not charged with a crime but merely with actions which constitute malfeasance and misfeasance in office as those terms are defined in the Constable Act. Under these circumstances, the corpus delicti rule as applied in criminal cases is completely inapplicable.

Secondly, appellant asserts that the court unlawfully received evidence of the polygraph examinations. Although it may very well be the case that polygraph examination results are inadmissible in all proceedings, see *Township of Silver Spring v. Thompson,* 90 Pa. Commw. 456, 496 A.2d 72 (1985),

no such results were received in evidence in this case. Under those circumstances, defendant was not prejudiced merely from the reference to such tests (not the results) which clearly the appellant submitted to voluntarily and with the advice of counsel. See *Appeal of McMullin,* 41 Pa. Commw. 474, 401 A.2d 572 (1979), and *Township of Silver Spring v. Thompson, supra.*

For these reasons, we ordered his removal.