J-A16024-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| EDWARD L. MERRITT | |
| Appellee | No. 1202 WDA 2015 |

Appeal from the Order Entered July 29, 2015
In the Court of Common Pleas of Cambria County
Criminal Division at No(s): CP-11-CR-0002202-2014

BEFORE: SHOGAN, OLSON and STRASSBURGER,* JJ.

MEMORANDUM BY OLSON, J.:                    **FILED DECEMBER 29, 2016**

Appellant, the Commonwealth of Pennsylvania (Commonwealth), appeals from an order entered on July 29, 2015 granting Edward L. Merritt's (Merritt) motion *in limine* pursuant to the *corpus delecti* rule. After careful consideration, we are constrained to affirm.

The trial court prepared the following summary of facts based upon testimony received during the preliminary hearing held in this case on October 22, 2014:

> Michael Kanuch ([Officer] Kanuch)[,] an officer with the Johnstown Police Department (JPD)[,] testified that on July 31, 2014, he along with other officers executed a search warrant on the residence of India Snyder (Snyder) [] in Johnstown. Officer Kanuch testified that at approximately 6:00 a.m. officers used a ram to breach the front door and gain access to the residence. Officer Kanuch was the second officer through the door and upon entering observed Merritt sitting on a couch with his hands raised. Officer Kanuch testified that he did not observe Merritt

*Retired Senior Judge assigned to the Superior Court.

make any movements and that Merritt was immediately taken to the ground and handcuffed by other officers.

In addition to Merritt, Snyder and Bernadette Urbassik (Urbassik) were found in the residence. During the search[,] officers located the following items: a [loaded 12-gauge] Remington shotgun under the couch; 68 stamp bags of heroin located . . . in the couch cushions; items of drug paraphernalia . . . in the kitchen; $4,[654.00] in cash and shotgun shells . . . in an upstairs bedroom.

Merritt was transported to the Johnstown Public Safety building where JPD detective Brett Hinterliter (Hinterliter) interviewed him. Merritt was read his **Miranda**[1] rights, indicated that he understood those rights, that he wished to waive them, and signed a waiver of rights form. In his statement to Hinterliter, Merritt acknowledged that one time while reaching under the couch for some marijuana that he dropped he felt the shotgun and pulled it out from under the couch. Snyder then told him that she owned the shotgun and that it was registered. At that time[,] Merritt placed the shotgun back under the couch and never touched it again.

Officer Kanuch testified that Snyder admitted to ownership of the shotgun and that it was registered to her. Officer Kanuch further testified that the [police] had information from confidential sources that a black male had been at [Snyder's] house for several weeks but [Officer Kanuch] was unable to say if Merritt was that person. Officer Kanuch further testified that [Snyder's] house was under surveillance for three days in the period of July 21st to July 31st and that Merritt was not observed entering or leaving the house during those periods. Finally, Officer Kanuch was unable to say if any clothing or personal items [owned by Merritt] were discovered in the house.

Trial Court Opinion, 9/28/15, at 2-3.

The procedural history in this case is as follows. On July 31, 2014, the police filed a criminal complaint charging Merritt with the following offenses:

---

[1] **Miranda v. Arizona**, 384 U.S. 436 (1966).

count one – possession with intent to deliver a controlled substance, 35 P.S. § 780-113(a)(30); count two – knowing and intentional possession of a controlled substance, 35 P.S. § 780-113(a)(16); count three – possession of a firearm by a prohibited person, 18 Pa.C.S.A. § 6105(a)(1); and, count four – possession of drug paraphernalia, 35 P.S. § 780-113(a)(32). Following a preliminary hearing on October 22, 2014, the magistrate bound all charges over to the trial court. On March 16, 2015, the Commonwealth filed a criminal information that withdrew counts one, two, and four and maintained a single charge of possession of a firearm by a prohibited person.

On May 15, 2015, Merritt filed an omnibus pretrial motion seeking suppression of his statement regarding the shotgun recovered from Snyder's residence. The motion cited two grounds for relief. First, Merritt argued that his statement should be suppressed because police obtained it in violation of his rights under **Miranda**. In the alternative, Merritt alleged that his statement should be excluded[2] under the *corpus delecti* rule since the Commonwealth failed to establish the elements of the firearms offense absent his admission. The trial court denied Merritt's suppression motion

_____

[2] This aspect of Merritt's brief in support of his omnibus pretrial motion requested relief in the form of "exclusion," rather than "suppression," because he sought relief *via* a motion *in limine*, a procedural device used to test the admissibility of evidence.

but ordered exclusion of his statement by opinion and order issued on July 29, 2015. This appeal followed.[3]

On appeal, the Commonwealth lists two related questions for our consideration.

> Whether the trial court erred when it found that the Commonwealth failed to prove the *corpus delecti* of the crime of possession of a firearm by a [prohibited person], when a loaded shotgun was found underneath the couch where a convicted felon was sleeping.
>
> Whether the trial court erred when it found that the Commonwealth failed to prove the *corpus delecti* of the crime of possession of a firearm by a [prohibited person], when the trial court required the Commonwealth to directly link [Merritt] to the crime.

Commonwealth's Brief at 4.

As both issues raised by the Commonwealth challenge the trial court's order granting Merritt's motion *in limine*, we apply the following principles in our review of those claims:

> A motion *in limine* is used before trial to obtain a ruling on the admissibility of evidence. **Northeast Fence & Iron Works, Inc. v. Murphy Quigley Co., Inc.**, 933 A.2d 664 (Pa. Super. 2007). "It gives the trial judge the opportunity to weigh potentially prejudicial and harmful evidence before the trial

_____

[3] The Commonwealth filed a timely notice of appeal on July 30, 2015. That same day, the trial court directed the Commonwealth to file, within 21 days, a concise statement of errors complained of on appeal. **See** Pa.R.A.P. 1925(b). The Commonwealth timely filed its concise statement on August 14, 2015 and the trial court issued its Rule 1925(a) opinion on September 28, 2015. The Commonwealth certified in its notice of appeal that the trial court's order terminated or substantially handicapped its prosecution of Merritt. **See** Pa.R.A.P. 311(d).

occurs, thus preventing the evidence from ever reaching the jury." **Commonwealth v. Reese**, 31 A.3d 708, 715 (Pa. Super. 2011) (*en banc*). A trial court's decision to grant or deny a motion *in limine* "is subject to an evidentiary abuse of discretion standard of review." **Id.**

Questions concerning the admissibility of evidence lie within the sound discretion of the trial court, and we will not reverse the court's decision absent a clear abuse of discretion. **Commonwealth Financial Systems, Inc. v. Smith**, 15 A.3d 492, 496 (Pa. Super. 2011), *citing* **Stumpf v. Nye**, 950 A.2d 1032, 1035–1036 (Pa. Super. [2008]). "An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." **Grady v. Frito–Lay, Inc.**, 839 A.2d 1038, 1046 (Pa. 2003).

**Parr v. Ford Motor Co.**, 109 A.3d 682, 690 (Pa. Super. 2014) (*en banc*) (parallel citations omitted), *appeal denied*, 123 A.3d 331 (Pa. 2015), *cert. denied*, 136 S.Ct. 557 (2015).

The Commonwealth's claims on appeal attack the trial court's application of the *corpus delecti* rule. In Pennsylvania, "a confession is not evidence in the absence of proof of the *corpus delicti*. ... [W]hen the Commonwealth [proffers] sufficient evidence of the *corpus delicti* to entitle the case to go to the jury, it [may introduce] a confession made by the prisoner connecting him with the crime." **Commonwealth v. Taylor**, 831 A.2d 587, 590 (Pa. 2003), *quoting* **Gray v. Commonwealth**, 101 Pa. 380, 386 (Pa. 1882). The rule is not limited to formal confessions; it extends to admissions and statements of the accused. **See Commonwealth v. Smallwood**, 442 A.2d 222, 225 (Pa. 1982).

The *corpus delicti* rule begins with the proposition that a criminal conviction may not be based upon the extra-judicial confession of the accused unless it is corroborated by independent evidence establishing the *corpus delicti*. **Commonwealth v. Ware**, 329 A.2d 258 (Pa. 1974). The *corpus delicti*, literally "the body of the crime," is defined as a wrong committed by criminal means, and consists of the occurrence of a loss or injury, and some person's criminal conduct as the source of that loss or injury. **Id**. at 274. The criminal responsibility of a particular, identifiable person, *e.g.* the accused, is not a requirement of the rule. **Commonwealth v. Elder**, 451 A.2d 236, 237 (Pa. Super. 1982). The purpose of the rule is to prevent the use of hasty and unguarded confessions to convict an individual when no crime has been committed. **Commonwealth v. Fried**, 555 A.2d 119, 120 (Pa. Super. 1989), *appeal denied*, 564 A.2d 915 (Pa. 1989).

Under Pennsylvania law, the application of the *corpus delicti* rule occurs in two distinct phases. The first phase involves the court's application of a rule of evidence governing the threshold question of the admissibility of the confession [or statement]. In this first phase of the rule's application, the court must determine whether the Commonwealth has proven the *corpus delicti* of the crimes charged by a mere preponderance of the evidence. If the court is satisfied that, on the evidence presented, it is more likely than not that a wrong has occurred through criminal agency, then the confession and/or admissions of the defendant are admissible. **Commonwealth v. Tallon**, 387 A.2d 77 (Pa. 1978); **Commonwealth v. Drexel**, 503 A.2d 27 (Pa. Super. 1986), *appeal denied*, 521 A.2d 931 (Pa. 1987).

The second phase of the rule's application occurs after a confession has already been admitted into evidence. After the court has made its initial determination that the Commonwealth has proved the *corpus delicti* by a preponderance of the evidence and has ruled the confession to be admissible, the *corpus delicti* rule additionally requires that the Commonwealth prove to the jury's satisfaction beyond a reasonable doubt, the *corpus delicti* of the crimes charged.

**Commonwealth v. Ahlborn**, 657 A.2d 518, 520-521 (Pa. Super. 1995),

*appeal denied*, 688 A.2d 170 (Pa. 1997).

In its first claim, the Commonwealth argues that the trial court inflated the applicable burden of proof, and thereby misapplied the *corpus delecti* rule, in requiring the prosecution to demonstrate Merritt's constructive possession of the shotgun beyond a reasonable doubt, instead of by a mere preponderance of the evidence. In advancing this claim, the Commonwealth relies on the record developed at the preliminary hearing, which showed that officers with the JPD recovered a loaded shotgun from underneath a couch on which Merritt, a convicted felon, was sitting. These facts, in the Commonwealth's view, constitute a sufficient showing, for purposes of the *corpus delecti* rule, that Merritt had constructive possession of the firearm and that, as a result, his statement regarding the weapon was admissible. To further support its position, the Commonwealth asserts that it only needed to show that the firearm was possessed criminally to prove the *corpus delecti* for possession of a firearm by a prohibited person under § 6105(a)(1). Here, the presence of the shotgun in a residence under surveillance by JPD, where 68 stamp bags of heroin were recovered, where three prior controlled drug buys were made, and where drug packaging materials were discarded, made clear that "the gun was possessed by people in the active distribution of heroin" and, hence, illegally held. Commonwealth's Brief at 13.

To introduce Merritt's statement consistent with the *corpus delecti* rule, the Commonwealth must establish by a preponderance of evidence

(exclusive of Merritt's admission that he touched the shotgun) that a criminal agency caused a violation of § 6105(a)(1). Section 6105(a)(1) provides, "[a] person who has been convicted of an [enumerated] offense ... shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth." 18 Pa.C.S.A. § 6105(a)(1). The elements of the offense proscribed by § 6105(a)(1) include proof that the defendant possessed a firearm and that he was convicted of an enumerated offense. *Commonwealth v. Thomas*, 988 A.2d 669, 670 (Pa. Super. 2009), *appeal denied*, 4 A.3d 1054 (Pa. 2010). Neither Snyder nor Urbassik has disqualifying convictions that bar their possession of a firearm under § 6105(a)(1). Moreover, no one disputes that Officer Kanuch's testimony established that felony convictions in Merritt's criminal history rendered him ineligible to possess a firearm. Consequently, we, like the trial court, shall confine our analysis to whether the Commonwealth proved Merritt's possession of the shotgun by a preponderance of the evidence.[4]

Since Merritt was not in physical custody of the shotgun at the time of arrest, the Commonwealth needed to prove that he had constructive

---

[4] The Commonwealth does not dispute that Merritt is the only individual in the present scenario whose possession of a firearm is precluded by § 6105(a)(1). Therefore, his alleged unlawful possession is the only conduct that gives rise to the type of criminal agency-related "loss" required by the *corpus delecti* rule.

possession of the weapon to satisfy the *corpus delecti* rule. In
**Commonwealth v. Murdick**, 507 A.2d 1212 (Pa. 1986), our Supreme
Court addressed the issue of constructive possession where contraband is
recovered from an area accessible to more than one individual and
potentially subject to the control of more than one person. In that case, the
defendant, Murdick, answered the door when local officers and narcotics
agents from the Attorney General's office arrived to serve a New Jersey
fugitive warrant on Murdick's paramour, Sandra Dietz. Murdick directed the
officers to the bedroom where Dietz was asleep. While some of the officers
placed Dietz under arrest, Murdick explained that he lived with Dietz and
that the couple planned to marry. He also stated that he owned one of the
dogs at the home. During this time, officers observed suspected marijuana
on the living room coffee table. Upon seeing the drugs in plain view, some
of the officers left to obtain a search warrant. While waiting for their return,
Murdick walked into the kitchen of the home and retrieved a beverage from
the refrigerator. After the officers returned with the search warrant, they
seized the marijuana from the living room coffee table and recovered
cocaine from the bedroom and the study. Following his arrest, Murdick
retrieved his clothing from the bedroom he shared with Dietz. A jury
convicted Murdick of simple possession and possession of contraband with
intent to distribute.

On appeal, Murdick challenged the sufficiency of the evidence of constructive possession. This Court vacated Murdick's conviction. Upon further review, the Supreme Court reinstated his judgments of sentence, explaining:

Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. [The Supreme Court] ha[s] defined constructive possession as "conscious dominion." *Commonwealth v. Davis*, 280 A.2d 119, 121 (Pa. 1971). [The Supreme Court] subsequently defined "conscious dominion" as "the power to control the contraband and the intent to exercise that control." *Commonwealth v. Macolino*, 469 A.2d 132, 134 (Pa. 1983). Though these tests may be helpful and logical in the abstract, application to actual factual situations, particularly when multiple actors are involved, has proven difficult for our lower courts in cases involving controlled substances located on premises in joint possession but not on the actual person of any of the parties entitled to occupy those premises.

To aid application, [our Supreme Court] ha[s] held that constructive possession may be established by the totality of the circumstances. *Commonwealth v. Fortune*, 318 A.2d 327 (Pa. 1974). [Our Supreme Court] took a further step toward resolving these problems in *Commonwealth v. Macolino*, *supra*. In *Macolino*, contraband and otherwise legal items used in the drug trade were found in the common bedroom of the Macolinos, a married couple. [The Supreme Court] held that "constructive possession can be found in one defendant when both the husband and wife have equal access to an area where the illegal substance or contraband is found." [*Macolino*,] 469 A.2d at 135. *See also Commonwealth v. Carroll*, 507 A.2d 819 (Pa. 1986).

Though the facts here do not precisely mirror those in *Macolino*, they are similar and the issue again concerns constructive possession in an area of joint control. [The Supreme Court held] that even absent a marital relationship constructive possession may be found in either or both actors if contraband is found in

- 10 -

an area of joint control and equal access. The marital relationship *per se* was not critical to the **Macolino** analysis; shared access to and control of the area where the contraband was found was critical.

Here there was evidence that [Murdick] lived in the residence and shared the bedroom with [] Dietz. From this evidence, the factfinder could find joint control over and equal access to the area where the cocaine was found, the bedroom. Given the totality of the circumstances, *i.e.*, joint control and equal access and evidence that the cocaine was found in plain view, the jury could have found constructive possession. [Moreover, the joint control and access enjoyed by Murdick and Dietz in the bedroom extended to the living room and supported the jury's finding that Murdick constructively possessed the marijuana recovered from the coffee table.]

**Murdick**, 507 A.2d at 1213-1214.

**Murdick** permits a finding of constructive possession when officers recover contraband from an area subject to joint access and control of multiple persons. Our review of the relevant case law confirms, however, that the decision in **Murdick** represents somewhat of a departure from conventional formulations of the constructive possession doctrine. Traditionally, constructive possession allows the prosecution to rely on proof of "conscious dominion" over **an object** rather than requiring evidence of direct physical control. As we noted above, courts define "conscious dominion" as "the power to control **the contraband** and the intent to exercise **that control**." **Macolino**, **supra**. The Court in **Murdick**, however, allowed evidence pertaining only to the defendant's power to control the premises to support an inference that he had the power and intent to control the contraband and that he therefore exercised conscious dominion over the

drugs. In dissent, Justice Zappala picked up on this concept, noting that:

"No evidence is cited, for none is present in the record, which is relevant to

proving [Murdick's] intent to control the contraband." ***Murdick***, 507 A.2d at

1215 (Zappala, J., dissenting). More recently, this Court recognized the

modified standard applied in ***Murdick***, which appears to obviate the need to

prove intent to exercise control over the contraband. ***See Commonwealth***

***v. Koch***, 39 A.3d 996, 1007 (Pa. Super. 2011).

Regardless of whether we apply the conventional test for constructive

possession (requiring both power **and** intent to control contraband), or the

modified formulation espoused in ***Murdick*** (inferring constructive possession

from joint control and shared access of the premises), we discern no abuse

of discretion in the trial court's refusal to find constructive possession here.

In contrast to the facts before the Supreme Court in ***Murdick***, the record in

this case contains no proof that Merritt lived in Snyder's residence (or

regularly shared accommodations there), possessed joint control of the

premises, or harbored the intent to control the shotgun. The trial court

made the following findings, which are supported by the record.

> Here, the Commonwealth's evidence establishes only that Merritt
> was present in the residence and seated on the couch under
> which the shotgun was found. [Officer] Kanuch testified that
> when he entered the residence he observed Merritt sitting on the
> couch with his hands raised, that Merritt made no movements,
> and was immediately taken to the ground and handcuffed. N.T.,
> 10/22/14, at 15-16. The Commonwealth has not established
> how long Merritt was staying in the house, *i.e.* was he an
> overnight guest or there on a long term basis, the only evidence
> offered in this regard was [Officer] Kanuch's statement that the

officers had information that a black male had been staying in the house for a couple of weeks. *Id.* This evidence is insufficient to establish that Merritt was the [individual] alleged to be staying there, particularly in light of [Officer Kanuch's] testimony that during the periods of surveillance leading up to July 31st[, Merritt] was not observed at the house.

Further, the evidence presented does not establish that Merritt had any right of joint control over the house or its contents. [Officer Kanuch did not know whether Merritt stored clothing or other personal items in the household.] The house is in Snyder's name, as is the shotgun, and there was no evidence presented that Merritt was anything other than a guest with no rights to control Snyder's property. In total[,] the Commonwealth's evidence has failed to show that Merritt had the right of joint access and control over either the shotgun or the house.

Trial Court Opinion, 7/29/15, at 11-12.

We agree with the trial court that Merritt's mere presence in Snyder's residence in close proximity to the shotgun is legally insufficient to show constructive possession by a preponderance of the evidence. *See Commonwealth v. Valette*, 613 A.2d 548, 551 (Pa. 1992) (mere presence in apartment where drugs are found does not demonstrate constructive possession); *Koch*, 39 A.3d at 1007 (constructive possession of contraband recovered from shared spaces and common areas of home requires proof of both power and intent to control contraband). Because the Commonwealth presented no evidence showing that Merritt regularly stayed at Snyder's residence or enjoyed joint control over the house or its contents, there is insufficient support for the Commonwealth's claim that the trial court improperly applied a higher burden of proof for establishing constructive possession.

We also reject the Commonwealth's supplemental position that the shotgun was possessed "criminally" because police recovered it from a house occupied by individuals involved in the distribution of narcotics. In this case, the Commonwealth filed a single firearms charge under § 6105(a)(1) against Merritt, presumably because he was the only individual at the scene who was subject to prosecution under that statute. No firearms-related offenses were filed against either Snyder or Urbassik because they were not ineligible to possess a firearm under § 6105(a)(1). Hence, our *corpus delecti* analysis necessarily focuses on whether the Commonwealth proved, by a preponderance of the evidence, a loss or a wrong resulting from Merritt's alleged criminal violation of § 6105(a)(1). We cannot abandon this traditional approach to legal analysis simply because a criminal episode occurred at a location known for drug-related activity. ***See Commonwealth v. Grahame***, 7 A.3d 810, 815-816 (Pa. 2010) (rejecting preconceived, generalized justifications such as "guns follow drugs" offered in support of protective searches and permitting such measures only where officers articulate facts establishing individualized, objective grounds for perceiving threats of armed violence).

The Commonwealth's second claim asserts that the trial court erred in requiring the prosecution to link Merritt to the criminal loss. This contention is meritless. As we stated above, the trial court needed to determine whether the Commonwealth proved the *corpus delicti* of an offense under

- 14 -

§ 6105(a)(1) by a preponderance of the evidence. This assessment required the trial court to consider whether some individual with a disqualifying conviction possessed a firearm in violation of § 6105(a)(1). Snyder and Urbassik could not be prosecuted under § 6105(a)(1), as neither of them had disqualifying convictions. No charge against them under § 6105(a)(1) could get to a jury. Logically, this confined the court's consideration to Merritt since he is the only individual in this case subject to prosecution under § 6105(a)(1). Because the nature of the charged offense limited the trial court's analysis to whether a viable charge was filed against Merritt, the trial court did not err in its application of the *corpus delicti* rule.

Order granting motion *in limine* affirmed. Case remanded. Jurisdiction relinquished.

Shogan, J. joins this memorandum.

Strassburger, J. files a dissenting statement.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/29/2016

- 15 -